RALPH YEARY *v.* STATE OF INDIANA.

[No. 171S12.  Filed June 5, 1972.  Rehearing denied August 8, 1972.]

*O. B. Hanger, Hanger & Hafsten,* of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, *Mark Peden,* Deputy Attorney General, for appellee.

DEBRULER, J.—The appellant in this case waived a jury trial and was found guilty of theft by deception in the Criminal Court of Marion County. The relevant portion of the indictment under which the appellant was charged states that he:

> "committed the crime of theft in that he knowingly, unlawfully and feloniously obtained by deception, control over property of William Krout, to-wit: money of the value of Seventy and no hundreds dollars ($70.00), with the intention to deprive the said William Krout permanently of the use and benefit of said property by knowingly creating and confirming to the said William Krout the false impression that he, the said Ralph Yeary, had a new picture tube in his certain Westinghouse television set then and there owned by the said William Krout and accepted payment of the said Seventy and no hundreds dollars ($70.00) for said picture tube whereas in truth and in fact the said Ralph Yeary had not installed a new picture tube in said television set. . . ."

The appellant's motion to correct errors contains eight specifications of error, seven of which are argued on this appeal. Four of the specifications are concerned with the sufficiency of the evidence and are considered together. The appellant argues that:

> "there is no evidence whatsoever in the record that the aforesaid false representation was made to William Krout, and no evidence that he paid any money to the Appellant, as alleged in the indictment. Proof that Patricia A. Krout paid the $70.00 upon belief that Appellant had installed a new picture tube in this set is not automatic proof that

William Krout paid appellant $70.00 upon the belief that appellant had installed a new tube in their set."

In reviewing the allegation of insufficient evidence this Court will not weigh the evidence nor resolve questions of credibility of witnesses, but will look to that evidence and the reasonable inferences therefrom which support the finding of the trial court. *Asher* v. *State* (1969), 253 Ind. 25, 244 N. E. 2d 89. The conviction will be affirmed if from that viewpoint there is evidence of probative value from which the trier of fact could reasonably infer that the appellant was guilty beyond a reasonable doubt. *Smith* v. *State* (1970), 254 Ind. 401, 260 N. E. 2d 558.

The evidence at trial indicates that the owners of a color television set began receiving a blurred picture and thereupon called the appellant, a television repairman, to fix the set. In response to that call, the appellant went to the television owner's home and, after examining the set, suggested that it needed a new picture tube. The wife testified that she was opposed to this suggestion but that her husband informed her on the telephone to let the appellant take the television back to his shop. The appellant returned the set a few days later and stated that a new picture tube had been installed. He presented the wife with a bill for $70.00, which the wife paid by check. However, the condition of the set had worsened and, since the owners were going on vacation, they called the appellant to pick up the set again and fix it while they were gone.

When they returned from vacation, the set was back in their home but still remained unfixed. The husband testified that he then called the appellant approximately fifteen to twenty times over a period of six months in an attempt to get his television repaired, but that all his attempts were unavailing. The husband testified that he spoke to the repairman on the telephone when the set was initially picked up and was told that the picture tube would have to be replaced and that the price would be $70.00.

Approximately eight months after the repair bill was paid in this case the owners called in another T.V. repairman to look at the set. He testified that in his opinion the original picture tube was still in the television set. He was unable to say what specific work had been done on the set, or whether or not the picture tube had been rejuvenated.

The appellant testified that he did not put a new picture tube in the television set, nor did he make such a representation to the owners. According to his testimony, he told the owners that their picture tube was bad, and that they could either put a new tube in the set, put a rebuilt tube in the set, or rejuvenate the existing tube. He testified that the owner then told him that he wanted the job done as cheaply as possible and that he would leave the decision up to him, since he was the expert. The appellant further testified that he made repeated attempts to satisfy the owners after the initial fixing of the set.

The relevant portion of the statute under which the appellant was charged in this case reads as follows:

"A person commits theft when he (1) knowingly:

\* \* \*

"(b)    obtains by deception control over property of the owner . . . and

"(2)    either

"(a)    intends to deprive the owner of the use or benefit of the property." I.C. 1971, 35-17-5-3, being Burns § 10-3030.

In I.C. 1971, 35-17-5-13, being Burns § 10-3040, deception is defined as follows:

"(3)    'Deception' means knowingly to:  (a) create or confirm another's impression which is false and which the actor does not believe to be true; or

"(b)    fail to correct a false impression which the actor previously has created or confirmed; or

"(f)    promise performance which the actor does not intend to perform or knows will not be performed."

Further, this section defines permanently deprived as follows:

"(13)  'Permanently deprived' means to:  (a) defeat all recovery of the property by the owners; or

"(b)  deprive the owner permanently of the beneficial use of the property. . . ."

Clearly if the State's witnesses are believed, the evidence supports the conviction in this case. According to the State's best evidence, the appellant alleged that he had put a new picture tube in a television set and collected seventy dollars from the victim on the basis of that promise. Furthermore, the evidence indicates that the appellant did defeat all recovery of the seventy dollars by the owner. The appellant's version, in which he admitted that he did not replace the picture tube but testified that he did not make any such allegation to the owners of the set, was apparently not believed by the trial court, and we will not disturb that finding.

We do not agree with the appellant that the State's oversight in not specifically establishing the ownership of the seventy dollars in question is fatal in this case. The evidence indicates that Mr. Krout had a conversation on the telephone with the appellant as follows:

"Q.  What, if anything, did he ever tell you about putting in a new picture tube?

A.  He originally said it needed a new picture tube. And, I relied on his judgment, and he said, he would put in a new picture tube, and at that moment on the telephone conversation, he quoted me the price, *which I agreed to pay*, and that was the price of the eventual bill." (Emphasis added.)

And later, on cross examination, he made further reference to that conversation as follows:

"A.  He said he would charge me a rock-bottom price, because he had done—I had done a favor to him, in this leasing, and he would charge me seventy dollars. So, I said, 'Fine'."

This evidence clearly indicates that Mr. Krout agreed to pay for a new picture tube in the television set at the time the set was originally taken. At the time the set was returned, Mr. Krout was not present, and Mrs. Krout accepted the television set and paid the bill (made out to M. Krout) with a check drawn on the Indiana National Bank on which was printed "William A. or Patricia A. Krout". Furthermore, after the set was returned in a defective condition, Mr. Krout himself took over all efforts to get satisfaction from the appellant. We think all these facts when taken together, although circumstantial, do permit an inference that Mr. Krout himself was defrauded in this scheme.

While payment by a wife clearly does not "automatically" prove payment by a husband since the two are separate persons in fact and in law, there is in this case, in our opinion, sufficient circumstantial evidence to prove that the wife was in fact paying out money owned by the husband.

The appellant cites *Crouch* v. *State* (1951), 229 Ind. 326, 97 N. E. 2d 860, in support of his position, but in light of the above analysis we do not find that case appropriate. In *Crouch,* the affidavit charged that a husband and wife were defrauded of their money whereas the proof at trial only demonstrated that false representations were made to the husband. The court reversed the conviction holding that the failure to prove the material allegations descriptive of the offense as to both the husband and wife was error. Here, as we have indicated above, we find that the material allegation concerning ownership of the money was proved by circumstantial evidence.

The appellant next argues that the court erred in allowing the wife to testify as to the television set since the indictment named only the husband. However, he cites neither authority nor reason in support of his position, and we are unable to see why the testimony of this crucial witness should have been excluded.

The appellant also assigns as error the admission into evidence of State's exhibits numbers one and two over his objection. State's exhibit one was a bill for seventy dollars from Advance T.V. Co. which Mrs. Krout testified she received when the set was delivered. The appellant objects to this exhibit on the grounds of relevancy, arguing that it does not bear the signature of the appellant, and that the firm name is not included on the indictment. However, we find no error in the admission of this exhibit. Mrs. Krout testified she was given this bill by the appellant when he delivered the set and the appellant admitted that he had been doing business as Advance T.V. Company for twenty-three or twenty-four years, and was so engaged at the time of this incident.

The appellant also objects to the admission of exhibit two, the check for seventy dollars, which Mrs. Krout gave to the appellant after receiving the bill. Apparently he objects to the fact that the check is made out to "Advance T.V. Co.", and although it was endorsed on the back in the name of "Ralph Yeary", there is no evidence introduced that the appellant in fact endorsed the check. The objection here is similar to the one above and is rejected for the same reasons.

The appellant next argues that the trial court erred in allowing an independent television repair man to testify as to the condition of the set some eight to nine months after the alleged fraudulent transaction occurred, claiming that such testimony did not have sufficient probative value and reliability to be admitted. We find no merit in this argument. If the witness had been called to testify concerning some change in the television set, then the passage of this amount of time would introduce speculation concerning how and when the change occurred. But in this case no such problem arises, for the testimony was to the effect that the original picture tube had in fact not been disturbed since its original installation, and the passage of time would not affect such testimony.

Judgment affirmed.

Arterburn, C. J., Givan, Hunter and Prentice, JJ., concur.

NOTE.—Reported in 283 N. E. 2d 356.