EVELYN JUNE BEECH *v.* STATE OF INDIANA.

[No. 2-673A129. Filed December 4, 1974.]

288

*Mary Beth Ramey,* of Indianapolis, *Julian Pace,* of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, *Robert A. Zaban,* Deputy Attorney General, for appellee.

SULLIVAN, P.J.—Beech appeals from a conviction of theft by deception. The conviction by court sitting without jury, is based upon an alleged fraud perpetrated upon the Marion

County Department of Public Welfare with respect to receipt of welfare benefits.

The evidence and facts most favorable to the State and to the trial court's judgment are as follows:

On April 13, 1970, Beech applied for Aid to Dependent Children (ADC) assistance at the Marion County Department of Public Welfare. This category of public assistance serves to provide aid to financially deprived and dependent children. Beech made application for herself and her three year old son. On the application form, Beech indicated that she separated from her husband in October of 1969 following his penal incarceration. Further, she placed a checkmark next to a provision whereby she agreed to notify the department "of any changes in my family income or resources, and also to report promptly any change in my living arrangements or family conditions which affect the amount of my assistance."

Beech received monthly payments of $115.00 from June, 1970 to August, 1972. This monthly amount was the maximum grant to an ADC household of two persons. During this period, pursuant to welfare regulations, the county welfare department conducted four home interviews with Beech. These periodic interviews, called "restudies" are conducted for the purposes of ascertaining changes in the recipient's situation, and to verify the expenses and income of the recipient. In each instance, the department caseworker, following agency procedure, inquired as to the whereabouts of Beech's husband. Beech consistently denied knowledge of her husband's residence or employment, although she stated to the caseworker that she occasionally spoke with Mr. Beech. During the period in which she received welfare assistance, Beech held several jobs for short periods of time and promptly reported such changes in employment status and income to her caseworker.

In May, 1972, the caseworker referred the Beech case to the welfare department's investigative branch for the purpose

of investigating a possible welfare fraud. This referral was occasioned by a home restudy visit by the caseworker in which the caseworker extensively searched Mrs. Beech's home and discovered some articles of men's clothing. On June 27, 1972, Mr. Whobrey, an investigator for the welfare department, visited Mrs. Beech's residence at 6:30 A.M. A man, later identified by Whobrey as Mr. Beech, answered the door, claimed to be a "Bob Jones", and stated that Mrs. Beech was not home. Whobrey then situated himself one-half block from the house and observed Mr. and Mrs. Beech together in the back yard.

Whobrey, on July 27 to 31, August 1 to 4, and on August 7, set up surveillance of Mrs. Beech's home. On those mornings, he observed Mr. and Mrs. Beech leave the house at approximately 6:45 A.M., followed the couple to the business address of Central Kitchens, observed Mr. Beech disembark from the auto, and followed Mrs. Beech back to her home. Whobrey later verified Mr. Beech's employment at Central Kitchens.

On August 11, 1972, the welfare department terminated Mrs. Beech's assistance effective October 1, 1972, and referred the case to the county prosecutor for prosecution. On September 26, 1972, both Mr. and Mrs. Beech were charged by indictment with theft by deception of the August 1972 welfare check. At the trial, without jury, the State produced witnesses, including Whobrey and some neighbors and landladies of Mrs. Beech, whose testimony consisted of observations placing Mr. Beech in the home at various times, and admissions by Mrs. Beech to neighbors that she was receiving welfare benefits while living with her husband.

Mrs. Beech presented evidence consisting primarily of testimony by Mr. Beech's brothers that Mr. Beech was residing, during the time in question, either in jail or at the homes of his brothers. Further evidence tended strongly to portray

Mr. Beech as an alcoholic continually in pursuit of his dissipative lifestyle.[1]

At the close of the State's evidence, counsel for Beech made a "motion for discharge" (more properly termed a Motion to Dismiss; *see* Indiana Rules of Procedure, TR. 41(B)) alleging the impropriety of the charges brought under the general theft statute and asserting the unconstitutionality of the welfare regulations which formed the underpinnings of the theft charge. The motion was denied.

The trial court found Mr. Beech not guilty, but held Mrs. Beech guilty and sentenced her to a term of one to ten years.

Beech attempts to raise the following issues:

1. The trial court committed error in not sustaining Beech's motion to dismiss because:

a. The charges should have been brought under the specific welfare fraud statutes, not the general theft statute;

b. Criminal charges cannot be based upon statutes or administrative regulations which are unconstitutional due to a conflict with the Supremacy Clause of the United States Constitution;

c. The State failed to prove that Mr. and Mrs. Beech were living together regularly and continuously;

d. The State failed to show that the act of living together by a husband and wife is deceptive;

e. The State failed to show that Mr. Beech was not "continually absent" from the home during the time period for which Mrs. Beech was indicted, or the period during which she received welfare benefits;

f. The State must prove all elements of the specific offense under the Offenses Against Property Act;

g. Welfare regulation, Burns Adm. Rules & Reg. § (52-1001)-2 is unconstitutional under the Supremacy Clause of the United States Constitution;

---

1. It is beyond conjecture that Mr. Beech was afflicted with alcoholism. At trial the State entered Mr. Beech's criminal history sheet which showed, among various other offenses, 28 charges of drunkenness, 4 vagrancy charges, 6 disorderly person or conduct charges, and 2 charges of driving under the influence of alcohol. Further evidence showed that Mr. Beech had been treated several times, apparently unsuccessfully, at two institutions for alcoholics.

h. When the State prosecutes a welfare fraud under the Offenses Against Property Act, it must prove the specific elements which constitute welfare fraud;

i. The State failed to introduce welfare regulations and show how the defendant contravened such regulations and thereby deceived the welfare agency;

j. The State failed to establish the federal or state regulations and statutes, and therefore failed to show how the defendant did not comply with them;

k. The State failed to show that Beech, at the time of making application, understood or was capable of understanding the instructions and information provided by the welfare department;

l. If a welfare recipient is eligible for assistance, then such recipient is not required to reapply for benefits if any change in circumstance would not alter the welfare grant. Such an unreported change in circumstance is not a ground sufficient to form the basis of a criminal prosecution;

m. Because mental or physical incapacity is a ground for receiving ADC and because Mr. Beech was an alcoholic, Mrs. Beech was entitled to receive ADC benefits for her son;

n. Since parental absence due to imprisonment is one ground for ADC and the welfare department had knowledge of Mr. Beech's frequent incarcerations, Mrs. Beech was qualified to receive ADC benefits.

2. The court erred in admitting certain evidence without proper foundation, and such evidence was prejudicial.

3. The court's finding of guilt is not sustained by sufficient evidence.

4. The court's finding of guilt is contrary to law and contrary to the welfare regulations.

5. The court's finding of guilt is contrary to law because the finding was based on IC 1971, 35-17-5-11, Ind. Ann. Stat. § 10-3038, being Misapplication of Entrusted Property and Property of Government or Credit Institutions rather than theft by deception under IC 1971, 35-17-5-3, Ind. Ann. Stat. § 10-3030.

6. The trial court's finding is erroneous in lacking sufficient evidence to overcome a reasonable doubt as to guilt.

In an effort to ascertain the precise issues properly before us, we have critically surveyed the motion to correct errors and its accompanying memorandum, appellant's brief, and appellant's reply brief. Beech has waived issues 1(i), 1(j), 2 and 4 by failing to cite supporting authorities in her appellate brief. Ind. Rules of Appellate Procedure, AP. Rule 8.3 (A) (7). In so holding, we are mindful of our Supreme Court's definitive statement in *Williams* v. *State* (1973), 260 Ind. 543, 297 N.E.2d 805, 807:

> "Appellant's additional allegations of error are presented with absolutely no legal argument or citation of authority. Under Rule A.P. 8.3(A) (7), this court need not consider such matters, and they are deemed waived. The cases are uniformly in accord with this proposition. *Yeary* v. *State* (1971), [257] Ind. [159], 273 N.E.2d 96; *Miller* v. *State* (1971) [256] Ind. [296], 268 N.E.2d 299. We cannot answer *bald assertions* of error that are not supported by legal authority. To do so would be to encourage inadequate and poor work on the part of the attorney." (original emphasis).

Further, Beech has waived issue 5 above, due to a failure to preserve such issue by inclusion in her motion to correct errors. Ind. Rules of Trial Procedure, TR. 59(G); *Bennett* v. *State* (1973), 159 Ind. App. 59, 304 N.E.2d 827.

Synthesizing the remaining issues for purposes of clarity, we are presented with the following questions:

1. Whether in view of the facts presented, the State can charge an offense under the general theft statute when two specific statutes governing welfare fraud exist.
2. Whether welfare regulation, Burns Adm. Rules & Reg. § (52-1001)-2 is unconstitutional, and, if so, whether it may properly form the basis of a criminal prosecution.
3. Whether the State proved by sufficient evidence every material element of the crime of theft by deception.

I

## THE STATE MAY PROSECUTE EITHER UNDER SPECIFIC OR GENERAL STATUTE WHEN ACT COMMITTED BY DEFENDANT IS EMBRACED WITHIN BOTH STATUTES

Mr. and Mrs. Beech were charged by indictment which states, in pertinent part, that they:

". . . on or about the 31st day of AUGUST, A.D. 1972, at and in the County of Marion and in the State of Indiana, committed the crime of theft in that they knowingly, unlawfully, and feloniously obtained by deception control over property of MARION COUNTY DEPARTMENT OF PUBLIC WELFARE, to-wit: Money of the value of One Hundred Fifteen and 00/100 Dollars ($115.00), intending to deprive MARION COUNTY DEPARTMENT OF PUBLIC WELFARE permanently of the use and benefit of said property by knowingly failing to correct the false impression which said EVELYN JUNE BEECH and ROBERT W. BEECH previously had created and confirmed that said ROBERT W. BEECH was not living in the same residence as said EVELYN JUNE BEECH whereas in truth and in fact said ROBERT W. BEECH was, and said EVELYN JUNE BEECH and ROBERT W. BEECH knew that said ROBERT W. BEECH was living in the same residence as said EVELYN JUNE BEECH, . . . ."

Beech asserted in her motion to dismiss and on appeal that she should have been charged under the welfare fraud statutes[2] rather than the general theft statutes.[3]

---

2. IC 1971, 35-18-16-1, Ind. Ann. Stat. § 10-2120 (Burns 1956) and IC 1971, 12-1-12-4 (Burns Code Ed.), which respectively provide as follows:

"Public assistance—Misrepresentations in applications—Penalty.— Whoever being an applicant for poor relief, or direct relief, or any form of assistance or who makes application for free care, attention, hospitalization, or other services, which is rendered free in whole or in part, and which is furnished by any governmental agency, unit or institution from public funds, and who knowingly misrepresents any facts in the application therefor or makes any false statement in connection therewith, or who, after having accepted such poor relief, or direct relief, or any form of assistance, care, attention, hospitalization, or other service, and whose financial condition and ability to pay have materially changed after filing of the original application, or who receives unemployment compensation and continues to accept such relief, assistance, care, attention, hospitalization or other service, and fails to report such material change to the person or persons

Insofar as appellant's argument to the effect that she was charged under the "wrong" statute may be considered as a challenge to the indictment, it has been waived. It is well settled that the sufficiency of an indictment must be tested by a motion to quash [dismiss], and that it must be made prior to trial. *Brown* v. *State* (1970), 254 Ind. 504, 260 N.E.2d 876.[4]

from whom such help is being received, shall, upon conviction, be guilty of a misdemeanor and fined not to exceed one hundred dollars [$100] or imprisoned in the county jail for not more than six [6] months, or both."

and

"Fraudulent acts.—Whoever obtains, or attempts to obtain, or aids, or abets any person to obtain, by means of a wilfully false statement or representation, or by impersonation, or by other fraudulent means:
  (a) Assistance, services or treatment to which he is not entitled;
  (b) Assistance, services or treatment greater than that to which he is justly entitled;
  (c) Payment of any forfeited instalment grant;
or, with intent to defraud, aids or abets in buying or in any way disposing of the property of a recipient of assistance without the consent of the county department shall be deemed guilty of a misdemeanor, and, upon conviction thereof, shall be fined in any sum not more than five hunudred dollars [$500] or be imprisoned for not more than three [3] months, or be both so fined and imprisoned, in the discretion of the court. In assessing the penalty, the court shall take into consideration the amount of money fraudulently received."

3. IC 1971, 35-17-5-3, Ind. Ann. Stat. § 10-3030 (Burns Supp. 1974) provides as follows:
"Theft in general.—A person commits theft when he (1) knowingly:
     * * *
  (b) obtains by deception control over property of the owner or a signature to any written instrument; . . . and
(2) either:
  (a) intends to deprive the owner of the use or benefit of the property;
     * * *
  (c) uses, conceals or abandons the property in such manner as knowingly to deprive the owner of such use or benefit; or
  (d) uses, conceals or abandons the property knowing such use, concealment or abandonment probably will deprive the owner of such use or benefit."

*See, infra.* Part III.

4. An attack on the sufficiency of an indictment or affidavit is governed by statutory provisions, IC 1971, 35-1-23-25, Ind. Ann. Stat. § 9-1126 (Burns 1956) (governing sufficiency of indictment or affidavit), *repealed* by Acts 1973, P.L. 325, § 5, and *replaced* by IC 1971, 35-3.1-1-4, Ind. Ann. Stat. § 9-906 (Burns Supp. 1974) and IC 1971, 35-3.1-1-6, Ind. Ann. Stat. § 9-908 (Burns Supp. 1974); and IC 1971, 35-1-23-28, Ind. Ann. Stat. § 9-1129 (Burns 1956) (governing motion to quash), *repealed* by Acts 1973, P.L. 325, § 5, and *replaced* by IC 1971, 35-3.1-1-4, Ind. Ann. Stat. § 9-906 (Burns Supp. 1974).

Beech's argument in this respect is perhaps more properly to be considered in the context of a claimed limitation upon the discretion of the prosecution when more than one statute appears to define the acts of defendant as a crime. Thus, Beech contends that when two ostensibly overlapping statutes exist, a specific statute prevails over a more general statute. The design of Beech's contention is manifest—a conviction under the general theft statute which defines a felony is punishable by a one to ten year sentence; while, the welfare fraud statutes define misdemeanors carrying substantially less severe penal sanctions. In support of her argument, Beech cites two California cases: *People* v. *Gilbert* (1969), 1 Cal.3d 475, 462 P.2d 580, 82 Cal. Rptr. 724; and *People* v. *Henderson* (1971), 15 Cal. App.2d 504, 93 Cal. Rptr. 357. *See also*, 2A Sutherland, *Statutory Construction* § 51.05 (1973). We are required, however, to follow the Indiana law which holds that the State may prosecute under any or all of the statutes which may have been violated. In *Von Hauger* v. *State* (1969), 252 Ind. 619, 623, 251 N.E.2d 116, 118, the Supreme Court said:

"It is sufficient if the indictment or affidavit charges and the evidence proves an offense under the statute."

*See also, Taylor* v. *State* (1968), 251 Ind. 236, 236 N.E.2d 825; *Durrett* v. *State* (1966), 247 Ind. 692, 219 N.E.2d 814, *cert. denied,* 386 U.S. 1024. *Compare, Languell* v. *State* (1971), 256 Ind. 165, 267 N.E.2d 377.

Under Indiana law, therefore, the State need not prosecute under the more specific of two statutes, nor under the statute carrying the lesser penalty. *Durrett* v. *State, supra; Languell* v. *State, supra.* In the instant case, the State, in electing to charge under the general theft statute, need only prove, to properly convict, the essential elements of the crime thus charged.

Inasfar as Beech's contention in this regard may be viewed as an attack on the sufficiency of the State's evidence to prove

theft by deception as opposed to welfare fraud, it is treated in Part III, *infra*.

## II

## INDIANA STATUTE AND REGULATION REQUIRED "CONTINUED ABSENCE FROM THE HOME" AS BASIS FOR ADC BENEFITS NOTWITHSTANDING UNCONSTITUTIONALITY OF PORTIONS OF INDIANA REGULATION

Beech contends that the Indiana welfare regulation forming the basis of her conviction is unconstitutional because it conflicts with the federal regulation which takes precedence under the "supremacy clause" (Article VI, Section 2) of the United States Constitution. In answer, the State makes only the shallow, unsupported counter-assertion that:

> "[T]here is nothing in the offenses against property act by which the alleged invalidity of the regulations concerning eligibility for public assistance can be construed to be a defense for theft by deception. It will be a sad day in our system of jurisprudence when the alleged invalidity of the regulations for determining eligibility for welfare or any other public funds constitutes a defense for the theft thereof."

This argument by the State begs the question and indicates an apparent disregard of an ancient jurisprudential rubric, i.e., that some *proscribed act* must accompany criminal intent in order to constitute a punishable crime. *Hopkins* v. *State* (1973), 155 Ind. App. 195, 291 N.E.2d 914; Perkins, *Criminal Law*, pp. 741-43 (2d ed. 1969).

It follows therefore under the instant facts, that, before Beech could be held criminally responsible, her conduct or conscious failure to act must have contravened some statute or regulation concerning receipt of ADC benefits. The premise underlying Beech's contention of unconstitutionality must therefore be further explored.

At the time here in question, as now, the Indiana welfare statutes provided for assistance to a "dependent child". Ind.

Ann. Stat. § 12-1-7-1 (Burns Code Ed. 1973). Section 12-1-1-1 thereof did then and does now define, insofar as pertinent, "dependent child", as:

"[A] needy child . . . who has been deprived of parental support or care by reason of . . . continued absence from the home . . . of a parent. . . ."

The Indiana welfare regulation which sought to implement the statutory provision, however, defined "continued absence" in somewhat restrictive terms as follows:

"(52-1001)-2. Continued absence from the home—Assistance to dependent children.—(a) For the purposes of administration of assistance to dependent children, continued absence from the home shall mean that the child has been deprived of the support or care of either parent by reason of the desertion of a parent, separation of the parents, incarceration of a parent in a penal or correctional institution, or service of a parent in the armed forces of the United States.

(b) When the continued absence is due to desertion or separation, the absence shall have been continuous for a period of at least six [6] months prior to the date of application for assistance to dependent children; except that under exceptional circumstances of need and where it is determined that the absence of a parent is actual and bona fide an application may be filed and a child may be considered immediately eligible upon a special finding of the county department of public welfare setting forth the facts and reasons for such action.

(c) When the continued absence is due to incarceration in a penal or correctional institution, such absence shall have been continuous for a period of three [3] months prior to the date of application for assistance for the dependent child, except that a child becomes immediately eligible when the sentence of a parent plus the number of days required to serve out the fine and costs at $5.00 a day, equals ninety [90] days or more. When the parent is incarcerated, an application may be filed and a child may be considered immediately eligible upon a special finding of the county department of public welfare setting forth the facts and the reason for such action.

(d) When the continued absence is due to service of a parent in the armed forces of the United States, the child

of such parent becomes immediately eligible for assistance to dependent children if otherwise eligible. [Bd. of Public Welfare, Reg. 2-402, adopted Feb. 21, 1946, filed March 27, 1946, eff. Apr. 6, 1946; as last amended Sept. 15, 1959, filed Oct. 29, 1959.]" Burns Ind. Ad. Rules & Regs. § (52-1001)-2 (1967).

As pointed out by Beech, this regulation was declared invalid in part in *Carter* v. *Stanton* (S.D. Ind. 1972), 350 F.Supp. 1337. However, subsequent to the submission of this appeal, the United States Supreme Court vacated the judgment of the District Court and remanded the cause "for further consideration in light of *Edelman* v. *Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974)". *Samkowski* v. *Carter* (1974), 416 U.S. 918, 94 S.Ct. 1916 and *Stanton* v. *Carter* (1974), 416 U.S. 918, 94 S.Ct. 1917.

Although the *Edelman* case, *supra,* dealt solely with the authority of the federal court to compel retroactive welfare benefit payments, the vacation of judgment by the U.S. Supreme Court destroyed the precedential value of the District Court decision, upon which Beech relies so heavily. *Troy State University* v. *Dickey* (5th Cir. 1968), 402 F.2d 515.

Even were we to articulate as our own, the reasoning and decision of the federal district court in *Carter* v. *Stanton, supra,* we would hold the Indiana regulation invalid only to the extent that it conflicted with the federal law governing aid to dependent children. The limitation of such invalidity is set forth in the following language of the district court:

"That Burns Ind. Admin. Rules & Regs. (52-1001)-2 (1967) and the Indiana Public Assistance Manual, Chapter III, §C-III B2, contravene the Social Security Act, 49 Stat. 627, as amended, 42 U.S.C. § 602(a)(10), and are invalid (a) to the extent that they require 'exceptional circumstances of need' as a condition of receiving assistance to dependent children, (b) to the extent they require either 'exceptional circumstances of need' or an 'actual and bona fide' absence of a parent as a condition of a person's filing an application for assistance to dependent children, and (c) to the extent that, as a condition of receiving, or applying for, assistance to dependent children, they require, as

proof of a continued absence, an absence of the parent or spouse for a period of at least six (6) months prior to the date of applying for assistance to dependent children. To this extent the regulation is invalid and may no longer be enforced. *See, Townsend* v. *Swank,* 404 U.S. 282, 286, 92 S.Ct. 502, 30 L.Ed.2d 448 (1971) ; *King* v. *Smith,* 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968)."[5]

Contrary to the position taken here by Beech, the *Carter* decision did not purport to render meaningless or invalid the basic requirement that under circumstances such as presented in the instant case, ADC benefits depend upon "continued absence from the home". In this respect, the Indiana Welfare statute and the unaffected portions of the "continued absence" regulation remained viable and enforceable. Not only are these basic Indiana provisions not in contravention of federal law, they are in fact harmonious therewith.

The pertinent provision of the Federal Social Security Act, 42 U.S.C. § 606 (a) was, and is, identical to the Indiana statute § 12-1-7-1, *supra,* as it defines a "dependent child" in terms of "continued absence" of a parent. In short, the basic Indiana statute and the Indiana regulations as construed even in the light of the *Carter* district court decision did at the time in question require, consistent with federal statute and cor-

---

5. The Indiana Department of Public Welfare, in apparent conformity with the district court decision in *Carter* v. *Stanton,* amended Regulation (52-1001)-2 on March 27, 1974 to provide:

*"Continued Absence from the Home—Assistance to Dependent Children*
(a) For the purposes of administration of assistance to dependent children, continued absence of either parent from the home constitutes the reason for deprivation of parental support or care when all of the following conditions exist:

1) The parent is physically absent from the home;

2) The nature of the absence constitutes family dissociation;

3) The absence has continued for 30 days, or facts exist that give rise to a presumption that the absence will continue for longer than 30 days.

(b) 'Family Dissociation' means a substantial severance of marital and family ties and responsibilities resulting in the child losing or having a substantial reduction of physical care, communication, guidance and support by at least one of his parents and includes separation due to hospitalization, deportation or incarceration.

(c) An otherwise eligible child may not be denied assistance to dependent children solely because his parent is in the military service."

responding regulations (45 C.F.R. § 233.90 (c) (1) (iii) ), that there be a continued absence from the home of a parent legally responsible for the support or care of the ADC child. *King* v. *Smith* (1968), 392 U.S. 309, 88 S.Ct. 2128.

Quite obviously, Mr. Beech, as the natural father of the child for whose benefit the defendant Mrs. Beech was drawing assistance, was legally responsible for the support of the child. *Crowe* v. *Crowe* (1965), 247 Ind. 51, 211 N.E.2d 164; *Bill* v. *Bill* (1972), 155 Ind. App. 65, 290 N.E.2d 749. It is his "continued absence from the home", then, upon which the right to ADC benefits depends, and we could hardly expect the trier of fact below to find from the evidence hereinbefore recited that Mr. Beech met the "continued absence" requirement.

## III

## EVIDENCE SUFFICIENT TO SUPPORT THEFT BY DECEPTION CONVICTION

Beech contends that the State failed to produce evidence sufficient to support a conviction of theft by deception as charged.

### (A) POSSIBLE ALTERNATIVE FACTUAL BASIS FOR ADC ELIGIBILITY UNDER CIRCUMSTANCES HERE PRESENTED DOES NOT AFFORD DEFENSE

Beech attempts to argue that if a welfare recipient is otherwise eligible for benefits, there is no need to reapply for such benefits or to notify the department of a change in circumstance. The alternative eligibility claimed by her is founded upon her assertions that Mr. Beech's alcoholism and/or his "frequent incarcerations" entitle her to draw benefits notwithstanding his continued presence in the household. She thus concludes that the evidence dictates an acquittal upon the theft charge.

Not only does Beech's argument in this regard ignore her affirmative duty, as required by the welfare regulations (Indi-

ana Public Assistance Manual, Chapter II, § II-G; Chapter IV, § I-L; Chapter IX, § II) to notify the department of all changes in her income, resources, and living or family arrangements it presupposes that the evidence, whether as to her husband's alcoholism, his periodic incarceration or otherwise, proves, as a matter of law, such incapacity as meets the statutory and regulatory requirements. She has not demonstrated such to be the case.

### (B) ELEMENT OF DECEPTION ADEQUATELY SUPPORTED BY EVIDENCE

Beech asserts a failure, by the prosecution, to show that she and her husband were regularly and continuously living together in contravention of welfare regulations. This, Beech contends, results in a failure to prove the essential element of deception.

Beech was charged by indictment with theft by deception pursuant to IC 1971, 35-17-5-3, Ind. Ann. Stat. § 10-3030 (Burns Supp. 1974), which provides in pertinent part:

"Theft in general.—A person commits theft when he (1) knowingly:

\* \* \*

 (b) obtains by deception control over property of the owner or a signature to any written instrument; . . . and

(2)    \* \* \*

 (a) intends to deprive the owner of the use or benefit of the property; . . . ."

The Legislature has further provided, in IC 1971, 35-17-5-13, Ind. Ann. Stat. § 10-3040 (Burns Supp. 1974), the following definition:

"(3) 'Deception' means knowingly to: (a) create or confirm another's impression which is false and which the actor does not believe to be true; or

 (b) fail to correct a false impression which the actor previously has created or confirmed; or

(c) prevent another from acquiring information pertinent to the disposition of the property involved; or . . .

\* \* \*

Deception may relate to the fact, value, law, opinion or intention."

In determining whether a particular act is "deceptive" within the meaning of the above statute, we must look to the evidence and the reasonable inferences therefrom which support the trial court's finding. *Yeary* v. *State* (1972), 258 Ind. 587, 283 N.E.2d 356.

According to the signed and properly marked application form executed by Beech, and according to the welfare regulations,[6] Beech as hereinbefore noted was under an affirmative duty to notify the welfare department of all changes in her income, resources, and living or family arrangements. If, in fact, Mr. Beech was living with appellant, her failure to so notify the department officials, after firmly creating the initial impression that she was living only with her child, was clearly a deceptive act within the meaning of IC 1971, 35-17-5-13, *supra,* and thus a criminal act under IC 1971, 35-17-5-3, *supra.*

Furthermore, sufficient evidence was adduced from which it was reasonable to conclude that Mr. Beech was regularly and continuously living in the home. Whobrey testified that he saw the appellant drive Mr. Beech to his place of employment on nine different occasions; including eight consecutive working days. Two former landladies of Mrs. Beech testified that they had observed Mr. Beech in the home at various times. Finally, two further witnesses testified that Beech had admitted to receiving welfare benefits while living with her husband.

### (C) ELEMENT OF KNOWLEDGE ADEQUATELY SUPPORTED BY EVIDENCE

Beech also contends that the State failed to produce suffi-

6. Indiana Public Assistance Manual, Chapter II, § II-G; Chapter IV, § I-L; Chapter IX, § II, *supra.*

cient evidence that she understood, and was capable of understanding, the welfare department instructions regarding notification of changes in circumstance. We surmise that Beech is attacking the State's evidence, or lack thereof, regarding the elements of knowledge and intent. *See,* IC 1971, 35-17-5-3, *supra.*

It has frequently been stated that it is possible to infer intent and knowledge from the facts presented at trial, *Capps* v. *State* (1972), 258 Ind. 565, 282 N.E.2d 833; *Schmidt* v. *State* (1973), 156 Ind. App. 1, 294 N.E.2d 638; and from the totality of the circumstances presented in each case, *Tuggle* v. *State* (1969), 253 Ind. 279, 252 N.E.2d 796.

At trial, Margaret Eubanks testified that in a conversation with Mrs. Beech regarding welfare assistance, Beech stated that Mr. Beech was living with her and that the welfare department would have "to catch her sleeping with him." Hildegard Keating also testified that she had discussed with Mrs. Beech on various occasions, the fact that Beech was living with her husband while receiving welfare benefits. Beech's admissions clearly import the requisite intent and knowledge to sustain the conviction.

Judgment affirmed.

Buchanan and White, JJ., concur.

NOTE.—Reported at 319 N.E.2d 678.