# STATE v. GLORIA SCROGGINS BUNN McCORVEY.

## 114 N. W. (2d) 703.

### April 19, 1962—No. 38,379.

*Nemerov, Perl, Spector & Hunegs,* for appellant.

*Walter F. Mondale,* Attorney General, *Keith M. Stidd,* City Attorney, and *Paul T. Aitken,* Assistant City Attorney, for respondent.

*Peter Dorsey* and *Raymond A. Reister,* for Minnesota Branch, American Civil Liberties Union, amicus curiae.

FRANK T. GALLAGHER, JUSTICE.

This is an appeal from a judgment and an order of the municipal court.

The defendant was arrested in Minneapolis about 12:30 a. m. on September 7, 1960, and charged with vagrancy in violation of Minn. St. 614.57, which provides as follows:

"The following persons are vagrants:

\*     \*     \*     \*     \*

"(4)   A common prostitute who shall be found wandering about the streets, or loitering in or about any restaurant, lodging house, saloon, or place where intoxicating liquors are sold."

She was tried before the court without a jury and found guilty. Thereafter she moved the court for an order vacating the finding of guilty and entering a finding of not guilty, or for a new trial, which motions were denied and this appeal taken.

The assignments of error raised by the defendant which we deem it necessary to consider on this appeal are: (1)   That the trial court erred in admitting over objections statements of police officers directed to the alleged reputation of the defendant as a prostitute; and (2) that § 614.57 is invalid and unconstitutional for lack of definiteness and certainty and for failure to state an offense.

At the trial of the case three officers of the Minneapolis police department morals squad, who assisted in the arrest of the defendant, were permitted to testify, over the objections of the defendant, as to her reputation for chastity in the community.

One of the officers testified, among other things, as to observations he had made of the defendant on the streets and at various hard-

liquor establishments on Hennepin Avenue from about 9:30 p. m. on the evening of September 6 prior to her arrest. He said that during the month prior to her arrest he had seen the defendant at various times in bars where intoxicating liquors were sold and that in the early part of 1960 he had seen her at times on the Minneapolis streets. The witness also said that he had recently talked to about 10 police officers, 7 or 8 bartenders, 15 to 20 prostitutes, and one cab driver regarding the reputation of defendant. He was then asked if he knew her reputation in the community for chastity. Her attorney objected on the grounds that it was irrelevant and that she had not put character in issue and that the prosecution could not do so until the defendant did. This objection was overruled by the court and the witness answered, "Yes." He was then asked, "What is her reputation?" The same objection as to the admission of this testimony was made by her attorney, and the court again overruled it. The witness answered, "She is a prostitute." The attorney for defendant moved that the answer be stricken, which motion was denied.

Another officer, who assisted in the arrest, testified that he knew defendant by sight for about 3 years; that he had seen her on the night she was arrested between 11 and 11:30 p. m. at a Hennepin Avenue bar talking with people who were sitting at the bar drinking; that during the month prior to her arrest he had seen her about 5 times between 9 p. m. and 1 a. m. in Minneapolis bars where intoxicating liquors were sold, and that in July 1960 he had seen her once a week at those bars and on occasions had observed her talking with men. He said he had talked with a dozen police officers in June and 3 bartenders in August 1960 regarding the reputation of the defendant. He was then asked on direct examination if after talking to these people he knew the reputation of defendant in the community for chastity, and his answer was, "Yes." He was then permitted to testify, over the objection of her attorney that she had not put character in issue, that the defendant "is a prostitute."

A third officer of the morals squad, who was present at the time of the arrest, testified that he had known the defendant by sight for about 6 months prior to her arrest, during which time he had seen her on the Minneapolis streets between 8 p. m. and 1 a. m. and at various Minne-

apolis hard-liquor bars—sometimes alone and sometimes with others. On one of these occasions she was talking with a man and on another occasion with two women. He stated he had talked to 8 police officers during the 6 months prior to the arrest of defendant, the last time about 3 days before; also to at least 5 prostitutes, and to a bar owner in July 1960, concerning the reputation of the defendant. Based on these conversations the witness was permitted to give his opinion that she was a common prostitute, over the objection that she had not put her character in issue and therefore the state could not.

■ It was reversible error under the record here to permit the three officers referred to above to testify as to the reputation of the defendant over her repeated objections that she had not put her character in issue.

In City of St. Paul v. Harris, 150 Minn. 170, 171, 184 N. W. 840, this court stated:

"No rule of criminal law is more thoroughly established than the rule that the character of the defendant cannot be attacked, until he himself puts it in issue by offering evidence of his good character."

This rule was also considered and applied in State v. Nelson, 148 Minn. 285, 181 N. W. 850.

In the Harris case, the defendant was convicted of the crime of keeping a house of ill-fame. At the trial the prosecution was permitted to present evidence to prove her bad reputation as part of its case in chief. Upon appeal this court granted a new trial for the error in admitting that evidence but remarked (150 Minn. 171, 184 N. W. 840) "that evidence as to the reputation of the place and of the persons who frequented it was competent."

Inasmuch as there must be a new trial for the error in admitting evidence of the reputation of the defendant over the objections raised, other arguments raised on appeal require no extended consideration at this time.

■ Although defendant attacks the constitutionality of § 614.57, the only part we need consider in connection with the case before us is paragraph (4) of said section, quoted above. Subject to constitutional restraints, the legislature is vested with a great amount of dis-

cretion in defining and declaring rules of conduct. State v. Northwest Poultry & Egg Co. 203 Minn. 438, 281 N. W. 753.

A criminal statute must be definite enough to give notice of the conduct required to anyone who desires to avoid its penalties; it must be sufficiently definite to guide the judge in its application and the attorney in defending a person charged with its violation. No more than a reasonable certainty can be demanded. Boyce Motor Lines, Inc. v. United States, 342 U. S. 337, 72 S. Ct. 329, 96 L. ed. 367; Lanzetta v. New Jersey, 306 U. S. 451, 59 S. Ct. 618, 83 L. ed. 888. Absolute certainty is not required; it is not necessary that there be mathematical precision in the statement of the conduct demanded or disapproved. State v. Northwest Poultry & Egg Co. *supra*; State v. Schaeffer, 96 Ohio St. 215, 236, 117 N. E. 220, 226, L. R. A. 1918B, 945, 952, Ann. Cas. 1918E, 1137, 1143.

In State v. Suess, 236 Minn. 174, 180, 52 N. W. (2d) 409, 414, this court stated:

"It is the duty of courts to sustain legislative enactments as reasonably certain when possible, and they will resort to all acceptable rules of construction to discover a competent and efficient expression of the legislative will. Coggins v. Ely, 23 Ariz. 155, 202 P. 391; State v. Partlow, 91 N. C. 550, 49 Am. R. 652. In construing the constitutionality of a legislative act, the intent of the legislature must be ascertained from the language of the entire act read in the light of the object evidently in view. Every presumption is in favor of the constitutionality of the act, and the court should not declare it unconstitutional unless it is satisfied, after careful consideration, that it conflicts with some provision of the state or federal constitutions. If the act is reasonably susceptible of two different constructions, one of which will render it constitutional and the other unconstitutional, the former construction must be adopted. Hassler v. Engberg, 233 Minn. 487, 48 N. W. (2d) 343. When a legislative act has as its purpose the prohibition of an undesirable form of conduct rather than a specific act, the definition by its very nature must be broad. Therefore, if it can be determined with reasonable certainty what conduct is disapproved, the statute is not unconstitutional on that ground. State v. Eich, 204 Minn. 134, 282 N. W. 810."

Applying the above principles of law to § 614.57(4), it is our opinion that it is not invalid and unconstitutional for lack of definiteness and certainty and for failure to state an offense. To the contrary, we believe that a person of common intelligence could determine its meaning with reasonable certainty and we hold it constitutional.

Reversed and new trial granted.