## STATE v. MILDRED SIMMONS.

158 N. W. (2d) 209.

April 11, 1968—No. 40,499.

*Douglas Hall,* for appellant.

*Douglas M. Head,* Attorney General, *George M. Scott,* County Attorney, and *Henry W. McCarr, Jr.,* Assistant County Attorney, for respondent.

Heard before Knutson, C. J., and Nelson, Otis, Sheran, and Frank T. Gallagher, JJ.

FRANK T. GALLAGHER, JUSTICE.

Appeal from a judgment convicting defendant of making a false statement to obtain public assistance and from an order denying a motion for a new trial.

Aid to Families with Dependent Children (ADC) is an assistance program administered by the Hennepin County Welfare Department. Every 6 months the department checks to determine the extent to which recipients are eligible for further ADC payments. Part of the eligibility check consists of a questionnaire, titled "Current Resources Data Sheet," which the recipient is required to fill out. At the top of the questionnaire the following instruction is given: "This check list is to be completed and signed by recipient at time of each review. It should reflect resources of all members of household. Recipient or beneficiary of resource and name of firm or origin of resource should be given, if necessary." The questionnaire contains 18 listings, each of which requires the recipient to disclose whether he has assets of specified nature. Item 4 inquires as to "Earnings or Wages from Employment." Item 18, a catch-all, is titled "Other (Specify)." At the bottom of the data sheet, the recipient is warned: "Willful omission or misrepresentation may be dealt with as a misdemeanor under Minnesota Statutes—256.83."

The defendant, Mildred Simmons, a divorcee, is the mother of three sons, all in their teens. She has received ADC assistance since 1952. In early 1965 she secured employment with Manpower, Inc., a concern which hires people on a day-to-day basis and sends them out to firms in need of temporary help. The record discloses that she worked for Manpower every week from the latter part of April 1965 until the end of July,

at which time she quit. The number of hours which she worked each week fluctuated, but from the first of May until the end of June she consistently worked approximately 40 hours per week. For the week ending June 20, she put in 36 hours, and for the week ending June 27, 38¾ hours. She testified that she did not work for a few days before and after June 21, 1965.

On June 21, 1965, Miriam Goldberg, defendant's caseworker, met with defendant for her semiannual eligibility check. They discussed the current resources data sheet. However, they did not discuss any particular item on the data sheet at that time, nor had they done so at earlier eligibility checks. So far as appears from the record, defendant had not been employed prior to early 1965. Thus, her previous experience with the data sheet offered no guide as to the scope of Item 4. At the June 1965 meeting, defendant filled out a data sheet on which she answered "not paid" to Item 3 ("Court Order Payments") and "none" to each of the other 17 listings, including Item 4. She testified that she answered "none" because she was not working at the time she signed the data sheet.

With exceptions not here relevant, the Hennepin County Welfare Department regulations provide that money which a recipient earns from private employment must be deducted to determine the amount of ADC payments to which she is entitled. Minn. St. 256.83 [1] makes it a misdemeanor for one to obtain assistance greater than that to which he is entitled by means of a "wilfully false statement or representation."

On February 16, 1966, the Hennepin County grand jury indicted defendant for violation of § 256.83. The crux of the charge was that her July 1965 payment was greater than that to which she was entitled because she falsely wrote "none" next to the item "Earnings or Wages from Employment" on the data sheet which she signed June 21, 1965.

---

[1] Minn. St. 256.83 reads: "Whoever obtains, or attempts to obtain, or aids or abets any person to obtain by means of a wilfully false statement or representation, or by impersonation, or other fraudulent device;

"(1)    Assistance to which he is not entitled;

"(2)    Assistance greater than that to which he is justly entitled; is guilty of a misdemeanor; and, upon the conviction thereof, shall be fined not more than $100 or imprisoned for not more than three months."

The case came on for trial in district court before a jury on June 6, 1966. The jury returned a verdict of guilty. Defendant was sentenced to 90 days in the workhouse. She then moved to set aside the conviction or in the alternative for a new trial. This motion was denied and defendant appeals from the judgment and the order denying her motion.

On appeal defendant argues (1) that the Current Resources Data Sheet is so indefinite and confused as to the date for which she must report wages that she cannot be found guilty of a willfully false statement or representation under Minn. St. 256.83; and (2) that the rules of the Hennepin County Welfare Department deny her equal protection of the law.

■  It is elemental that a criminal statute is unconstitutional if it is not sufficiently definite to inform a person of ordinary intelligence what it is that the statute compels or prohibits. State v. Kuluvar, 266 Minn. 408, 123 N. W. (2d) 699. While it is not necessary that there be mathematical precision in the statement of the conduct required or prohibited, State v. McCorvey, 262 Minn. 361, 114 N. W. (2d) 703, a statute may not require or forbid conduct in terms so vague that men of common intelligence must guess at its meaning. Anderson v. Burnquist, 216 Minn. 49, 11 N. W. (2d) 776.

At trial, Miss Goldberg, defendant's caseworker, testified that Item 4 on the data sheet requires disclosure of all income received since the previous eligibility check 6 months earlier. The prosecution is of the same opinion. Very likely the jury adopted that interpretation, for the court gave no instruction defining the scope of Item 4. Defendant argues that Item 4, when read this broadly, violates the principles set forth in the preceding paragraph. She does not challenge the statute itself. Its meaning is clear and unambiguous.

A recipient who completes the data sheet must interpret Item 4. Does it require disclosure of all earnings since the previous eligibility check 6 months earlier, or is the requirement limited to disclosure of earnings current at the time of signing the data sheet? We think it could well be interpreted to require only the latter. The data sheet is captioned *"Current* Resources Data Sheet." (Italics supplied.) This caption is likely to convey the impression that only current earnings are required

to be disclosed. This is especially true with respect to persons, such as the typical ADC recipient, who are unfamiliar with accounting procedure. An ancillary report which the Welfare Department requires fortifies this conclusion. At the time of each semiannual eligibility check, the recipient must agree to report employment which she obtains in the interim before the next eligibility check. Would not the ordinary person conclude that this interim report was designed to disclose interim income, and hence that the data sheet was limited to disclosure of current income? It is true that defendant did not give an interim report as required, but she was not charged with that failing. The point is that her knowledge of the requirement to report interim income would very likely affect her assessment of what Item 4 requires.[2]

In view of the reading which recipients are likely to give Item 4, it might well be that a constitutional issue would be presented if that item were construed broadly enough to require disclosure of all income for the previous 6 months.[3] However, we see no need to raise a question of statutory interpretation to constitutional proportions. The uncertainty in Item 4 can be removed by construing it to require only disclosure of earnings being received from current income. Such a construction overcomes any constitutional objection. Moreover, this construction is required quite apart from the issue of vagueness, for a regulation made the basis for criminal prosecution must be strictly construed in favor of the accused. Wisniewski v. United States (8 Cir.) 247 F. (2d)

---

[2] Respondent, pointing out that it would be absurd to read Item 4 as requiring an affirmative response only if the recipient was working on the day she signed the data sheet, argues that the item must necessarily be read to require disclosure of the previous 6 months' earnings. Admittedly, a reading which would require employment on the very day of signing is absurd. However, the argument ignores what appears to be the most reasonable reading of Item 4—namely, that it requires disclosure of earnings being received from current employment.

[3] We find unavailing respondent's argument that the data sheet is designed for administrative purposes and hence is not subject to the requirements applicable to provisions of the criminal law. Of course, when the data sheet is used as an administrative device, it is not subject to restrictions applicable to criminal statutes. But when it is made the basis for a criminal conviction, it becomes subject to the standard of certainty required of all criminal statutes.

292. The defendant, not the prosecution, is entitled to the benefit of the doubt. If, in the future, the Welfare Department wishes to put the criminal law behind a requirement that the prior 6 months' earnings be disclosed, it can quite easily reword Item 4 so as to clearly require such a disclosure.[4]

Since Item 4 was not limited by an instruction in the district court, the defendant is entitled to a new trial under proper instructions. On the new trial, the trial court should instruct the jury that Item 4 requires only disclosure of earnings being received from current employment.

■ It is our opinion that the rules of the Hennepin County Welfare Department do not deny defendant equal protection of the law under the facts and circumstances here. In view of our decision, as set out in the preceding paragraph, that the case should be remanded for a new trial, we deem it unnecessary to consider further defendant's second legal issue.

Reversed and remanded for a new trial in accordance with this opinion.

---

[4] The ease with which Item 4 could be changed in this regard is itself reason for giving a limited construction to the item as it now reads. The certainty required in a criminal statute depends to some extent on the nature of the crime. If the conduct to be proscribed is not susceptible of precise statement, it may be proscribed in rather general terms. State v. McCorvey, 262 Minn. 361, 114 N. W. (2d) 703. On the other hand, one would expect a high degree of precision in statement if the conduct can easily and clearly be defined.