Claude WATTS, Jr., petitioner,
Appellant,

v.

STATE of Minnesota, Respondent.

No. 51278.

Supreme Court of Minnesota.

May 22, 1981.

C. Paul Jones, Public Defender, and Kathy A. King, Asst. Public Defender, Minneapolis, for appellant.

Warren Spannaus, Atty. Gen., St. Paul, Thomas L. Johnson, County Atty., Vernon E. Bergstrom, Chief, Appellate Section, Asst. County Atty., Thomas A. Weist and Anne E. Peek, Minneapolis, for respondent.

## OPINION

OTIS, Justice.

This is an appeal from an order of the district court denying a petition for post-conviction relief from a 1976 judgment of conviction for assault with a dangerous weapon and attempted aggravated robbery. Minn.Stat. §§ 609.225(2), 609.245, 609.17 (1976). Petitioner is serving consecutive prison terms of 3 to 15 years for the two offenses. He contends (1) that he should be given a new trial because of the admission of a handgun seized from his apartment; or (2) that he should be granted sentencing relief. We affirm.

Late on the evening of February 19, 1976, police received a report from Melvin and Marjorie Eubanks, that petitioner, accompanied by an unidentified man, had come to their residence, used a large revolver in an attempt to rob Mr. Eubanks, and hit Mrs. Eubanks on the head with the gun, causing it to be fired into a wall.

Shortly before noon on February 25, Minneapolis police officers, acting without a warrant, went to petitioner's apartment, knocked on the door and when petitioner answered, arrested him. After frisking him, handcuffing him, giving him a *Miranda* warning, the officers asked petitioner if he owned a gun. He denied owning but admitted possessing a gun, and stated that it was hidden in a chair in his living room, gesturing with his head toward the apartment as he spoke. Without objection by petitioner, but without his express consent, three of the officers entered the apartment, and found and seized the gun. After further discussion with petitioner at the police station, the officers obtained a search warrant, returned to the apartment, and seized five bullets.

At trial Eubanks testified that he had met petitioner a number of years earlier when they lived in the same apartment building. He stated that although he had not seen petitioner in a long time, he immediately recognized him when he appeared at the Eubanks' apartment. Petitioner also refreshed his memory by introducing himself as "Claude Watts, Jr." Petitioner then displayed a gun and demanded money, guns and liquor. It was when Mrs. Eubanks entered the room in response to the commotion that petitioner struck her with the gun causing it to discharge. Mrs. Eubanks, who had not met petitioner before, later identified his picture.

Other evidence relied upon by the prosecution at trial included: (a) testimony by police concerning the contents of the victims' initial complaint against petitioner; (b) testimony by the police that the victims were obviously "shook up" and that Mrs. Eubanks was bleeding and had a bump and laceration where she had been struck; (c) testimony by police that they observed the damages and the hole left by the discharged bullet; (d) testimony by Eubanks that he later found the bullet and gave it to the police; (e) testimony by the police concerning the arrest of the petitioner and the seizure of the gun and the bullets; and (f) testimony by a firearms expert that her comparison of the discharged bullet with a bullet test fired from the gun revealed no significant observable differences.

Petitioner took the stand in his own defense knowing that his credibility would be impeached by disclosure of several prior felony convictions. He testified that while he knew Eubanks, he had not gone to the Eubanks' apartment on the night in question but had been in his apartment alone studying. He claimed, as he had to the police, that an unidentified person had given him the gun and two bullets as security for a $35 loan, and that this same person had appeared minutes before the police came to arrest him and had given him three more bullets as security for an additional loan of one dollar.

1. Petitioner argues that the admission of the gun requires a new trial for two reasons. The recent decision of the United States Supreme Court in *Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), must be applied retroactively; and (b) the trial court and postconviction court erred in holding that petitioner voluntarily consented to the police entering his residence to seize the gun.

■ (a) In *Payton v. New York*, the United States Supreme Court held that absent consent or exigent circumstances, the Fourth Amendment bars police from entering a suspect's residence without a warrant to make a felony arrest. As we hold in *State v. Smith*, 305 N.W.2d 798 (Minn. 1981), filed herewith, *Payton* is not to be given retroactive application.[1]

(b) The district court, while conceding that the issue was a difficult one, determined that petitioner had consented to the police entry to seize the gun and that this consent was voluntary.

■ While it is true that consent to search may be implied by the circumstances —as, for example, when a defendant, warned of a probable search, states that he does not object, *Canal Zone v. Sierra*, 594 F.2d 60 (5th Cir. 1979), this consent may not be lightly inferred, lest the exception to the warrant requirement emasculate the general rule.[2] Here we are not entirely free from doubt on the question of whether petitioner gave voluntary implied consent to enter. However, it is not necessary to decide that issue, since we are satisfied that the error, if any, was harmless.

■ The United States Supreme Court in *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), stated that the test is "whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction." *Id.* at 23, 87 S.Ct. at 827 *quoting Fahy v. Connecticut*, 375 U.S. 85, 86–87, 84 S.Ct. 229, 230, 11 L.Ed.2d 171 (1963). If read literally, the test would be an extremely

difficult one to meet, and might well render that harmless error rule illusory. But as Professor LaFave points out in his treatise, the United States Supreme Court in *Harrington v. California*, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969); *Brown v. United States*, 411 U.S. 223, 93 S.Ct. 1565, 36 L.Ed.2d 208 (1973), and *Milton v. Wainwright*, 407 U.S. 371, 92 S.Ct. 2174, 33 L.Ed.2d 1 (1972)—appears to have endorsed a practical, less-than-literal application of the rule. 3 W. LaFave, *Search and Seizure*, § 11.7 (1978). In the context of this case, comparing the tainted evidence with the untainted, we conclude that any error, in admitting the gun was harmless beyond a reasonable doubt. The evidence was merely cumulative with respect to other strong evidence pointing to guilt.

2. Petitioner contends that section 609.-11(1) was not applicable because (i) aggravated robbery is not one of the offenses enumerated in the statute and therefore the minimum term should not have been imposed for the commission of attempted aggravated robbery; and (ii) aggravated robbery and assault with a dangerous weapon by their nature require use of a dangerous weapon and therefore preclude sentencing enhancement under section 609.11(1).

Minn.Stat. § 609.11(1) (1976), provided as follows:

All commitments to the commissioner of corrections for imprisonment of the defendant are without minimum terms except when sentence is to life imprisonment as required by law and except that any commitment following the defendant's first conviction of an offense wherein he had in his possession a firearm or

1. We note that a number of issues were left unanswered by the *Payton* court, including (a) its effect on cases which, relying on *United States v. Santana*, 427 U.S. 38, 96 S.Ct. 2406, 49 L.Ed.2d 300 (1976), upheld nonexigent warrantless arrests initiated at the threshold when a suspect voluntarily opens the door to the police, *see United States v. Johnson*, 626 F.2d 753 (9th Cir. 1980); (b) what is a consensual entry to arrest; (c) what constitutes exigent circumstances in this context *see* W. Donnino and A. Girese, *Exigent Circumstances for a Warrantless Home Arrest*, 45 Albany L.Rev. 90

(1980); and (d) the precise way in which the exclusionary rule will be applied to *Payton* violations. Because of our holding of nonretroactivity, we of course address none of these issues in this case. However, we believe it should be obvious to the police that they must proceed with caution and, wherever practicable, obtain warrants before attempting at-home arrests of suspects.

2. For an excellent discussion of the case law and relevant principles, *see* 2 W. LaFave, *Search and Seizure*, § 8.2 (1978).

used a dangerous weapon at the time of the offense shall be for a term of not less than one year plus one day, nor more than the maximum sentence provided by law for the offense for which convicted, and except that any commitment following defendant's second or subsequent conviction of an offense wherein he had in his possession a firearm or used a dangerous weapon at the time of the offense shall be for a term not less than three years, nor more than the maximum sentence provided by law for the offense for which convicted, and such person shall not be eligible for parole until he shall have served the full minimum sentence herein provided, notwithstanding the provisions of sections 242.19, 243.05, 609.12 and 609.135. The offenses for which mandatory minimum sentences shall be served as herein provided are: aggravated assault; burglary, kidnapping, manslaughter, murder in the second or third degree, rape, robbery, sodomy, escape while under charge or conviction of a felony, or discharge of an explosive or incendiary device.

■ (i) While aggravated robbery is not included in the statute, robbery is included. If the statute is to have any application to robbery, it must apply to armed robbery—that is, to aggravated robbery. *See State v. Jonason*, 292 N.W.2d 730 (Minn.1980).

■ (ii) Petitioner's second contention concerning section 609.11(1) is that the legislature did not intend that one convicted of assault with a dangerous weapon or aggravated robbery be sentenced both to the maximum statutory penalty for that offense as well as to a mandatory minimum term under section 609.11(1). We do not agree. The clear wording of the statute seems to permit one convicted of either offense to be sentenced to both the statutory maximum penalty and the minimum term provided by section 609.11(1).

■ (b) We need not decide whether the two offenses are part of the same behavioral incident, since it is clear that section 609.035 does not bar two sentences for two offenses where they are against different

victims. *State v. Rieck*, 286 N.W.2d 724 (Minn.1979); *State v. Gilbert*, 262 N.W.2d 334 (Minn.1977).

Affirmed.