**STATE of Minnesota, Respondent,**

v.

**Sharon Renee NELSON, Appellant.**

**No. CX–82–1581.**

Supreme Court of Minnesota.

Aug. 31, 1984.

C. Paul Jones, Public Defender, Kathy King, Asst. Public Defender, Minneapolis, for appellant.

Hubert H. Humphrey III, Atty. Gen., St. Paul, Robert M.A. Johnson, Anoka County Atty., Anoka, for respondent.

Martha A. Eaves, St. Paul, amicus curiae for Southern Minnesota Regional Legal Services, Inc.

COYNE, Justice.

Sharon Renee Nelson was convicted by the Anoka County District Court for wrongfully obtaining in excess of $2,500.00 in Aid to Families with Dependent Children ("AFDC") benefits in violation of Minn. Stat. § 256.98 (1982). Nelson was sentenced to the custody of the commissioner of corrections for a period of 19 months pursuant to Minn.Stat. § 609.52, subd. 3(1) (1982). Execution of her sentence was stayed and Nelson was placed on probation for a period not to exceed 10 years with conditions of probation to include a six-month probationary jail term. Execution of this latter sentence was also stayed pending this appeal.

On appeal from her judgment of conviction Nelson contends that her conviction violated her right to due process and also that the district court committed reversible error by admitting evidence seized pursuant to a search warrant which was issued on an insufficient affidavit. We affirm.

From June 1981 through February 1982 Nelson received $4,646.00 in assistance for herself and three of her children under the AFDC Absent Parent Program. Nelson's eligibility for assistance under this program in part rested on her statements to the welfare agency that her children were deprived of parental support or care as a result of their father's, George Bazoff, "continued absence" from the home. Minn.Stat. § 256.12, subds. 14 and 15 (1982).[1] On her six-month AFDC redetermination form dated May 19, 1981, Nelson,

---

1. Under Minn.Stat. § 256.12, subd. 14 (1982), AFDC assistance grants are provided on behalf of children who, inter alia, are "deprived of parental support or care by reason of the * * * continued absence from the home * * * of a parent." The phrase "continued absence" is in turn defined in Minn.Stat. § 256.12, subd. 15 (1982) as follows:

    **Continued absence from the home.** "Continued absence from the home," as used in sections 256.72 to 256.87, means the absence from the home of the parent, whether or not entitled to the custody of the child, by reason of being an inmate of a penal institution or a fugitive after escape therefrom, or absence from the home by the parent for a period believed to be, and declared by applicant to be, of a continuous duration together with failure on the part of the absent parent to support the child, provided that prior to the granting of such aid all reasonable efforts have been made to secure support for such child.

    For a more complete discussion of the various requirements of AFDC Absent Parent Program eligibility, see the discussion in *State v. Ibarra,* 355 N.W.2d 125 (Minn.1984, filed herewith).

reiterated that Bazoff, her former husband, did not live with her and their three younger children; she declared, however, that he made weekly visits of one-half hour. On November 29, 1981, Nelson reaffirmed that Bazoff had not returned to her home to live but she stated that he visited four to five hours twice each week. Each AFDC redetermination form contained Nelson's signed statement that she understood that she was obliged to provide correct information to the agency and to report any changes in Bazoff's visitation.

In January 1982 an anonymous telephone caller informed a member of the Anoka County Attorney's Welfare Fraud Unit that George Bazoff was living with Nelson and not in the apartment he rented as a front for a welfare fraud scheme. The informant supplied the precise addresses of both Nelson's townhouse and Bazoff's apartment. The caretaker at the apartment complex told an investigator that she had not seen Bazoff for several months, and she said that Bazoff had told her when renting the apartment that it would seldom be occupied except on weekends. An Anoka County welfare worker advised the investigator that Nelson would not be eligible for AFDC benefits under the Absent Parent Program if Bazoff were living with her. On February 1, the investigator received a second anonymous tip that George Bazoff was living at Nelson's townhouse and that he worked nights at Anoka State Hospital. On inquiry the hospital verified that Bazoff worked the 11 p.m. to 7:30 a.m. shift. At 7:20 a.m. on January 20 an investigator observed an automobile registered to Bazoff parked outside Nelson's townhouse, and at 10 a.m. on February 2 an automobile, on which Bazoff's application for registration was pending, was seen parked outside Nelson's home.

On March 11, 1982, following execution of a search warrant issued on the foregoing facts, Nelson was charged with wrongfully obtaining AFDC assistance in violation of Minn.Stat. § 256.98 (1982). On denial of her motion for an order suppressing the evidence obtained on execution of the search warrant, Nelson waived trial by

jury. After a four-day trial, the court found Nelson guilty of wrongfully obtaining assistance from July 1981 through February 1982 in an aggregate amount in excess of $2,500. Specifically, the court found that Nelson represented, willfully and falsely, that Bazoff was continuously absent from her home when, in fact, he was "present nearly every day." The court also found that Nelson had made the misrepresentations in order to obtain assistance to which she was not entitled.

■ On appeal Nelson does not question the trial court's findings of fact with regard to her misrepresentations. She maintains only that her conviction must be reversed because the phrase "continued absence from the home" is so vague and uncertain in its meaning and application that its use as a basis for her criminal conviction violates due process of law under the fourteenth amendment. This same due process challenge to the AFDC eligibility standard, "continued absence," was raised in *State v. Ibarra*, 355 N.W.2d 125 (Minn.1984, filed herewith). For reasons more fully explicated in the *Ibarra* opinion, we conclude that use of the "continued absence" standard for determining eligibility in the prosecution of persons accused of wrongfully obtaining AFDC benefits under the Absent Parent Program is not violative of due process.

■ The plain, common sense meaning of "continued absence from the home" is clear. Entitlement to benefits under the AFDC Absent Parent Program does not exist when both parents are physically present in the home. Bazoff testified that his almost daily presence in Nelson's home was for the purpose of caring for his emotionally disturbed son and to assist his former wife in chores which would inure to the benefit of the family unit. If Bazoff, who was employed, did not care for and financially support his children, it was not by reason of his "continued absence from the home." More to the point, it was not necessary for Nelson to understand the technical meaning of the phrase "continued

absence" to avoid criminal prosecution. As we explained in *State v. Ibarra, supra,* the thrust of a Minn.Stat. § 256.98 prosecution is that the defendant concealed or misrepresented a material fact:

> As long as the recipients of AFDC or other types of welfare respond honestly and truthfully to the agency's questions and demands for information, they remain within the confines of the law. Accordingly, due process is not violated as long as individuals are informed of their responsibility to be truthful and report any changes in their household conditions to the agency.

*State v. Ibarra, supra,* at 129.

The evidence disclosed that Nelson had sufficient notice to avoid criminal prosecution. When she was arrested in February of 1982, Nelson admitted that commencing in October, 1981 Bazoff began to visit her home almost daily and that sometime before Christmas he began to remain at her home the entire day and sometimes to sleep there. She explained that she did not disclose this change in visitation both because she thought it unnecessary and because she feared losing AFDC benefits. At trial Nelson admitted that the information set out in the redetermination forms did not accurately reflect the amount of time Bazoff was spending in her home. Moreover, while Nelson claims that she was never specifically advised by her AFDC caseworker of her obligation to report changes in Bazoff's visits, when Nelson was hospitalized in May 1981 she did report to her caseworker that Bazoff would care for the children. We conclude, therefore, that Nelson had sufficient notice of her responsibilities to satisfy any due process concerns.

Nelson's second challenge is directed to the court's refusal to suppress evidence obtained pursuant to the search warrant executed in her home. She maintains that the affidavit submitted by the state in support of its search warrant application contained uncorroborated hearsay statements of an anonymous informant and, hence, did not meet the probable cause standard demanded by *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969).

■ If the supporting affidavit in question does not meet the "two-pronged test" under *Aguilar* and *Spinelli,* the affidavit does reveal the corroboration of the details of the informant's tip by independent police work indicative of the informant's veracity or reliability under the "totality of the circumstances" test more recently articulated in *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). We find it unnecessary, however, to rule on the sufficiency of the showing of probable cause, for we are convinced that even if issuance of the warrant was improper, introduction of the evidence seized on its execution is not grounds for reversal.

■ The erroneous admission of evidence seized in violation of a fourth amendment right is harmless when it is merely cumulative of other overwhelming evidence of guilt. *State v. Oquist,* 327 N.W.2d 587, 591 (Minn.1982); *Watts v. State,* 305 N.W.2d 860 (Minn.1981). Here the evidence found in Nelson's home consisted of prescriptions, bills, and letters addressed to Bazoff and clothing and other items which may have belonged to him. This evidence was cumulative of other, much more compelling evidence, most notably Nelson's and Bazoff's admissions that Bazoff was present in Nelson's home almost daily for most of his non-working hours. The case was tried before a judge without a jury. In view of the trial court's clearly stated misgivings about the validity of the search warrant, her express reliance on Nelson's and Bazoff's admissions, and her purposeful avoidance of any reference to the contested evidence, we conclude that even if the warrant was improperly issued, admission of the evidence obtained under the warrant was harmless beyond a reasonable doubt. *State ex rel Kopetka v. Tahash,* 281 Minn. 52, 160 N.W.2d 399 (1968); *Smith v. Paderick,* 519 F.2d 70 (4th Cir. 1975).

Affirmed.