STATE of Minnesota, Respondent,

v.

Elizabeth Ann IBARRA, Appellant.

No. C0–82–1346.

Supreme Court of Minnesota.

Aug. 31, 1984.

Rehearing Denied Oct. 8, 1984.

C. Paul Jones, Public Defender, Ann Remington, Asst. Public Defender, Minneapolis, for appellant.

Hubert H. Humphrey, III, Atty. Gen., Norman B. Coleman, Jr., Janet Newberg Anderson, Sp. Asst. Attys. Gen., St. Paul, D. Gerald Wilhelm, Sp. Asst. Watonwan County Atty., St. James, for respondent.

Martha A. Eaves, St. Paul, amicus curiae, for Southern Minnesota Regional Legal Services, Inc.

COYNE, Justice.

Appellant Elizabeth Ann Haffner Ibarra was convicted by the Watonwan County District Court for wrongfully obtaining Aid to Families with Dependent Children ("AFDC") benefits in violation of Minn. Stat. § 256.98, (1982).[1] The district court stayed imposition of Ibarra's sentence on the condition of her payment of $5,765.00 in restitution and compliance with the terms of her probation for a maximum period of ten years. The court further ordered a reduction of Ibarra's probationary period to a minimum of three years if she completes her restitution payments and otherwise complies with the terms of her probation. Upon careful consideration of the issues raised in Ibarra's appeal of her judgment of conviction, we affirm as modified.

AFDC assistance grants are provided on behalf of needy children who are "found to be deprived of parental support or care by reason of the death, continued absence from the home, physical or mental incapacity of a parent, or who [are the children] of an unemployed parent." Minn.Stat. §§ 256.12, subd. 14, and 256.73 (1982). The program is administered by local welfare agencies who determine eligibility on the basis of information furnished by the individual recipient. To obtain assistance a recipient must complete an initial application and interview, six-month redetermination forms and interviews, and monthly income reports. Both the initial application and redetermination forms require recipients to acknowledge their understanding that they may be prosecuted for fraud if they have knowingly provided false information to the agency.

From October 1979 through July 1981 Ibarra received assistance for herself and her young daughter under what is commonly known as the AFDC Absent Parent Program. This program provides assist-

---

1. Minn.Stat. § 256.98 (1982) makes it a crime to obtain assistance by fraudulent means. It provides as follows:

A person who obtains, or attempts to obtain, or aids or abets any person to obtain by means of a wilfully false statement or representation, by intentional concealment of a material fact, or by impersonation or other fraudulent device, assistance to which he is not entitled or assistance greater than that to which he is entitled, or who knowingly aids or abets in buying or in any way disposing of the property of a recipient or applicant of assistance without the consent of the local agency with intent to defeat the purposes of sections 256.12, 256.72 to 256.872, chapter 256B, is guilty of theft and shall be sentenced pursuant to section 609.52, subdivision 3, clauses (1), (2) and (5). The amount of the assistance incorrectly paid shall be the difference between the amount of assistance actually received and the amount to which the recipient would have been entitled under state and federal law had the welfare agency been informed of all material facts. The amount of any assistance determined to have been incorrectly paid shall be recoverable from the recipient or his estate by the county or the state as a debt due the county or the state or both in proportion to the contribution of each. Any amounts recovered shall be paid to the appropriate units of government in the same manner as provided in section 256.863. To prosecute or to recover assistance wrongfully obtained under this section, the attorney general or the appropriate county attorney, acting independently or at the direction of the attorney general, may institute a criminal or civil action.

Minn.Stat. § 609.52, subd. 3(1) (1982) sets out the maximum sentence for persons like Ibarra who are convicted of wrongfully obtaining in excess of $2,500 in assistance:

Whoever commits theft may be sentenced as follows:

(1) To imprisonment for not more than ten years or to payment of a fine of not more than $10,000, or both, if the value of the property or services stolen exceeds $2,500 * *

ance grants for the benefit of dependent children, i.e., children who are deprived of parental support or care by reason of a parent's continued absence from the home. Minn.Stat. § 256.12, subd. 14 (1982). In her initial application form dated September 26, 1979, Ibarra stated she lived with her daughter at the K & K Apartments in Butterfield, Minnesota, and that the child's father, Jesus Ibarra, did not live with them.[2] In her subsequent six-month redetermination forms dated February 29 and September 3, 1980, and February 28, 1981, Ibarra similarly claimed that Jesus was not living with them, but that he visited for several hours a week. Likewise, in all her monthly income reports Ibarra stated she and her daughter lived alone.

In June 1981 Ibarra was charged with wrongfully receiving AFDC assistance.[3] The substance of the complaint was that she knowingly misrepresented that Jesus was an absent parent. To support its charges that Jesus was living with her, the state introduced the testimonies of five of Ibarra's neighbors at the K & K Apartments. These witnesses testified that Jesus was around Ibarra's apartment on a daily basis and at times which indicated he was living there. The district court found beyond a reasonable doubt that Ibarra knowingly misrepresented Jesus' presence in her home and accordingly convicted her of wrongfully receiving $5,765 in assistance in violations of Minn.Stat. § 256.98 (1980).

A. Due process was granted.

On appeal Ibarra raises several challenges to her conviction and sentence. Her primary claim is that the phrase "continued absence from the home" is so vague and uncertain in its meaning and application that it violates due process of law when

used to form a basis for criminal prosecution.

The phrase "continued absence from the home" is explained in Minn.Stat. § 256.12, subd. 15 (1982) as follows:

"Continued absence from the home," as used in sections 256.72 to 256.87, means the absence from the home of the parent, whether or not entitled to the custody of the child, by reason of being an inmate of a penal institution or a fugitive after escape therefrom, or *absence from the home by the parent for a period believed to be, and declared by applicant to be, of a continuous duration together with failure on the part of the absent parent to support the child,* provided that prior to the granting of such aid all reasonable efforts have been made to secure support for such child. (emphasis added).

This statutory definition is complimented and further elucidated by the continued absence standard contained in the formal rule promulgated by the State Department of Public Welfare, that is codified at Minn. Rule 9500.0070, subp. 9 (1983):

A parent is continually absent from the home if he/she is physically absent from the home and if this absence interrupts or makes uncertain his/her ongoing parental support or care; there is no minimum time period used to establish continued absence. The agency shall obtain, and the applicant shall provide, all available facts serving to establish a continued absence.[4]

The general due process standard demanded of criminal statutes is that they must not be so vague that persons of common intelligence must guess at their meanings. *State v. Simmons,* 280 Minn. 107, 158 N.W.2d 209 (1968). "A criminal statute must be definite enough to give notice

---

**2.** Jesus Ibarra was adjudicated the father of Ibarra's daughter in November 1978. Ibarra and Jesus were married in July 1981.

**3.** Ibarra was originally charged with wrongfully receiving $7,247.00 in AFDC benefits from October 1979 through July 1981. The trial court subsequently reduced the amount to $5,765 to

represent the benefits Ibarra received after her eighteenth birthday on February 13, 1980.

**4.** Both these statutory and administrative definitions are consistent with the federal eligibility requirements found in 42 U.S.C. § 602(a) (1982) and 45 C.F.R. § 233.90(b)(6) (1983).

of the conduct required to anyone who desires to avoid its penalties." *State v. Target Stores, Inc.*, 279 Minn. 447, 471, 156 N.W.2d 908, 923 (1968) (quoting *State v. McCorvey*, 262 Minn. 361, 365, 114 N.W.2d 703, 706 (1962)). In addition, a regulation used as a basis for criminal liability is subject to the same due process scrutiny as other criminal statutes. *State v. Simmons, supra.* Our examination of Ibarra's argument in the light of these due process considerations convinces us her challenge is meritless.

▮ Ibarra's argument that the "continued absence" standard is unconstitutionally vague hinges on an underlying assertion that an AFDC recipient must understand the precise scope of the technical definition of the phrase to avoid criminal liability. However, while understanding the intricacies of AFDC eligibility would certainly assist recipients in avoiding prosecution, the common ordinary meaning of "continued absence" is clear and lack of knowledge of the technical definition does not result in liability.

▮ The statute upon which Ibarra's conviction rests is Minn.Stat. § 256.98 (1982). Prosecutions are brought under this statute against individuals who misrepresent or conceal material facts with the intent of obtaining assistance for which they know they are ineligible. The gravamen of this prosecution is the defendant's concealment or misrepresentation. As long as the recipients of AFDC or other types of welfare respond honestly and truthfully to the agency's questions and demands for information, they remain within the confines of the law. Accordingly, due process is not violated as long as individuals are informed of their responsibility to be truthful and report any changes in their household conditions to the agency.

The evidence in this case reveals that Ibarra had adequate notice that the information she provided the agency must be accurate. Her caseworker told her that if she did not answer the questions truthfully and report changes in her household, she could be charged with fraud, and Ibarra

initialed statements to that effect on her initial application and six-month redetermination forms. In addition, while she denied that Jesus did live in her home, at trial Ibarra admitted that she knew she was required to inform the agency if Jesus was living with her and that she knew she would be ineligible if Jesus lived in her home. On the basis of these facts we are satisfied that Ibarra's due process rights were not violated.

B. The evidence was legally sufficient.

▮ Ibarra's second contention is that the evidence was insufficient as a matter of law to support her conviction for wrongfully obtaining AFDC benefits in violation of Minn.Stat. § 256.98 (1982). To convict her the state was required to prove beyond a reasonable doubt the following facts: (1) She obtained assistance; (2) She was not entitled to this assistance at all, or in the amount she was seeking, and that she knew this; (3) She made a false representation and intended thereby to obtain assistance; (4) The value of the excess assistance was more than $2,500. CRIMJIG 24:14 (1977).

On appeal, Ibarra raises no challenge to the state's assertion that she received $5,765 in AFDC benefits from February 1980 to July 1981. She maintains, however, that the state did not produce sufficient evidence to prove that she intentionally misrepresented the truth of her living arrangements or that she did so for the purpose of obtaining assistance to which she knew she was not entitled.

▮ The standard for reviewing the sufficiency of the evidence supporting a criminal conviction is well established. Our examination is limited to ascertaining whether the trier of fact "giving due regard to the presumption of innocence and to the state's burden of proving the defendant's guilt beyond a reasonable doubt, could reasonably have found the defendant guilty" of the offense charged. *State v. Turnipseed*, 297 N.W.2d 308, 313 (Minn. 1980), quoting *State v. Merrill*, 274 N.W.2d 99, 111 (Minn.1978). In making this deter-

mination we evaluate the evidence in the light most favorable to the verdict, and assume the prosecution witnesses were believed and the defense witnesses disbelieved. *State v. Turnipseed, supra,* at 313. This standard remains the same regardless of whether a court or jury heard the evidence. *State v. Mytych,* 292 Minn. 248, 194 N.W.2d 276 (1972).

■ Upon viewing the evidence we are convinced it was sufficient to support the district court's factual findings. Five of Ibarra's neighbors at the K & K Apartments testified they saw Jesus around the building on a daily or near daily basis. Several of these witnesses stated they observed Jesus' pick-up truck parked in the building lot before and after work, heard his voice or saw him in Ibarra's apartment, and saw Ibarra hanging out men's clothes to dry. A legitimate inference to be drawn from these and similar observations is that Jesus was living with Ibarra and their daughter. *State v. Merrill,* 274 N.W.2d 99 (Minn.1978); *State v. Whelan,* 291 Minn. 83, 85, 189 N.W.2d 170, 172 (1971); *State v. Norgaard,* 272 Minn. 48, 52, 136 N.W.2d 628, 631 (1965). This conclusion is buttressed by the testimony of two of Ibarra's neighbors who told of separate conversations in which Ibarra and Jesus indicated Jesus was living at the K & K Apartments. Upon the assumption that the district court credited this testimony and rejected Ibarra's rebuttal testimony, we are satisfied that it reasonably could have found the state met its burden of proving beyond a reasonable doubt that Ibarra's oral and written statements to the welfare department concerning the limited time Jesus spent with her and their daughter misrepresented the fact that he was living with them. *State v. Merrill, supra,* at 111. We further find, on the basis of Ibarra's admission at trial that she knew she would not have been entitled to AFDC Absent Parent Benefits if she had informed the department that Jesus was living with her, that the district court reasonably concluded Ibarra made the representations in order to receive assistance for which she knew she

was ineligible. *State v. Everson,* 286 Minn. 246, 248, 175 N.W.2d 503, 505 (1970).

Despite her own admission and similar testimony by her caseworkers that she would not have received benefits had she informed them that Jesus was living with her, Ibarra maintains that the state failed to prove that she was not entitled to benefits under the AFDC Absent Parent Program and that she wrongfully received benefits in violation of section 256.98. AFDC benefits were provided Ibarra because the information she furnished the agency depicted her daughter as a child who was "deprived of parental support or care by reason of ... [Jesus'] continued absence from the home." Minn.Stat. § 256.12, subd. 14 (1982). Ibarra contends that in order to demonstrate that she was ineligible for the benefits she received the state must prove not only Jesus' physical presence in the home but also that he supported and cared for their daughter. She asserts that because the state failed to prove that Jesus supported the child, her conviction must be reversed.

■ Under various federal and state statutes and regulations the phrase "continued absence from home" is said to encompass situations in which a parent is physically absent from the home and the nature of the absence is such that the child is deprived of the absent parent's support or care. 45 C.F.R. § 233.90(c)(1)(iii). When, as in this case, the state establishes that the parent who has been represented as absent is, in fact, living in the home and, hence, that there is no physical absence, it is both absurd and unnecessary to require proof that the parent was providing support or care. To do so would be to place an impossible burden on the state which would in all likelihood result in serious intrusion into the privacy of AFDC recipients. Moreover, if the parent resides in the home, the child is not deprived of support or care "by reason of" the parent's absence. The gravamen of prosecution for welfare theft is that assistance was wrongfully obtained through false representations or concealment of material facts. We hold that once

the state proves the putatively absent parent resided or was regularly present in the home, it is not required to delve into the parent's relationship with the child to show that there was no deprivation of parental guidance.

We are not unmindful of the determination in *Freeborn County Welfare Board v. Hernandez,* 299 Minn. 195, 217 N.W.2d 210 (1974), that there was substantial evidence to support the finding that the seven children of Patrick Hernandez were deprived of parental support and care in spite of the father's presence in the home of the children's custodian. The paternal grandmother, rather than *either* parent, was given custody of her son's children pursuant to a divorce decree which set the father's legal obligation for support of the seven children at $35 per week. Although the father lived in the same household as the children, his mother could have turned him out at any time; there was no evidence that he provided any support or care beyond the meager amount required by court order; and their mother did not reside in the same household. It is, however, one thing to find eligibility even though one non-custodial parent lives in the same household as his children when the children are needy and the other parent is unquestionably absent. It is quite something else to say, as appellant urges, that misrepresentation with respect to the absence of a parent—a prerequisite for eligibility under the Absent Parent Program—constitutes a violation of section 256.98 only if it can also be proved that the supposedly absent parent supported the child—i.e., that the child simply was not a needy child. We decline to so construe the statute.

We also reject Ibarra's alternative argument that her conviction should be reversed because the state did not prove either that she received assistance for which she was entirely ineligible or that she received an amount greater than she deserved. Referring to her offer of proof concerning eligibility for AFDC benefits under the Unemployed Parent Program, which provides benefits when a resident unemployed parent satisfies the program requirements, Ibarra contends that she may have been eligible for greater benefits under the Unemployed Parent Program had she disclosed that Jesus was living with her than she obtained by representing Jesus as an absent parent. To put it another way, Ibarra would have us interpret section 256.98 to require the state to prove not only that the defendant was ineligible for benefits through the assistance program under which the defendant applied but also that had the agency been informed of all relevant facts it would have determined that the defendant was not entitled to benefits under any program.

In *People v. Carlson,* 76 Cal. App.3d 112, 142 Cal.Rptr. 638 (1978), the California Court of Appeals was faced with a similar contention that a recipient's eligibility for benefits under its Unemployed Father Program was a defense to a charge of wrongful receipt of benefits under the Absent Father Deprivation Program. The *Carlson* court declined to recognize such a defense:

> Appellant's interpretation of the statute seems unreasonable to us and cannot be what the Legislature intended. It would or could encourage welfare recipients who may or may not be eligible on a different basis to make their own unilateral determinations of their own eligibility, excluding the welfare department from the process. If this should occur it would wreak havoc with the administration of the AFDC program. It overlooks the obvious fact that if a recipient knows she is no longer eligible on the original basis on which she is obtaining aid (absent father) but believes in good faith she is eligible on another basis (unemployment of the father) she certainly would seek aid on the alternative basis rather than risk a perjury conviction for continuing to file false declarations.

*Id.,* 142 Cal.Rptr. 641.[5] Similarly, we find that the legislature could not have intended

---

5. For other jurisdictions which have reached a

similar conclusion, *see, State v. Warren,* 25

Ibarra's proposed construction. The better interpretation of section 256.98 is that it only demands that the state prove noneligibility under the program through which the defendant obtained assistance. We are in part led to this conclusion by the statutory reference to *"material"* facts, Minn.Stat. § 256.98 (1982), which affirmatively limits the criminal inquiry to proof and consideration of only those misrepresented or concealed facts which originally misled the agency into granting assistance.[6]

Ibarra's final challenge is directed toward the amount of her court ordered restitution. She argues that the court failed to credit her for the period when Jesus was in school and not living with her.

The district court determined that in August and September of 1980 Jesus was attending technical school and living in Jackson, Minnesota. We agree with Ibarra that this finding is contrary to a determination that she misrepresented his absence during this period. While it does not alter the appropriateness of the district court's ruling that Ibarra wrongfully received assistance in excess of the $2,500 threshold of Minn.Stat. § 609.52, subd. 3(1) (1982), we hold that the amount of her owed restitution is reduced to reflect the $688 in assistance the state failed to prove that she wrongfully received in those two months.

Affirmed as modified.

WAHL, Justice (dissenting).

I respectfully dissent. Minn.Stat. § 256.-98 (1982) provides for prosecution of persons who wrongfully obtain assistance to which they are not entitled and recovery of the amount incorrectly paid. The statute defines the amount of assistance incorrectly paid as "the difference between the amount of assistance actually received and the amount to which the recipient would have been entitled under state and federal law had the welfare agency been informed of all material facts." Under the statute, it was error for the trial court to refuse Ibarra's offer of proof that she was eligible for the AFDC Unemployed Parent program. If she were eligible for that program, the amount she would have received under it should be subtracted from the amount she received under the Absent Parent program to determine any amount incorrectly paid, which is all that is recoverable under the statute.

In this case, Ibarra, if eligible, would have received a larger monthly AFDC grant had she applied for the proper program. The fact that she did not apply for the proper program is apparently due to the fact that she did not know of its existence. Both of the AFDC workers who handled Ibarra's case testified that they had never told Ibarra about the Unemployed Parent program. The federal regulations governing application, determination of eligibility, and the furnishing of assistance under public assistance programs, including AFDC, provide:

> Applicants shall be informed about the eligibility requirements and their rights and obligations under the program. Under this requirement individuals are given information in written form, and orally as appropriate, about coverage, conditions of eligibility, scope of the program, and related services available, and the

---

Wash.App. 886, 611 P.2d 1308 (1980); and *Beech v. State,* 162 Ind.App. 287, 319 N.E.2d 678 (1974).

**6.** While it does not affect our resolution of this issue, we note that many of the concerns raised by this case regarding AFDC recipients' need to know the various program limitations could be avoided in the future if the Department of Public Welfare orders the various local agencies to comply with the mandate of its own Minn.Rule 9500, subd. 10 (1983):

> The local agency shall inform applicants and recipients of the availability of all programs,

the benefits and limitations of each, the areas of client choice among and within programs and the results of such choices, the items concerning eligibility or payment which must be reported if they change, the time within which such reports must be made, and any other policies or actions which have a direct effect on recipients.

Both of Ibarra's AFDC caseworkers stated at trial that they never informed Ibarra of the availability of the Unemployed Parent Program. It is at least possible that if they had this entire proceeding could have been avoided.

rights and responsibilities of applicants for and recipients of assistance. Specifically developed bulletins or pamphlets explaining the rules regarding eligibility and appeals in simple, understandable terms are publicized and available in quantity.

45 CFR § 206.10(a)(2)(i) (1983). Further, Minnesota rules provide:

The local agency shall inform applicants and recipients of the availability of all programs, the benefits and limitations of each, the areas of client choice among and within programs and the results of such choices, the items concerning eligibility of or payment which must be reported if they change, the time within which such reports must be made, and any other policies or actions which have a direct effect on recipients.

Minn.Rule 9500.0050, subp. 10 (1983). Not only did the county withhold information from Ibarra which could have precluded the dispute here, it now wants to recover an amount that may be more than the amount allowed by statute.

The majority opinion incorrectly interprets section 256.98. The statute offsets the amount to which the recipient would have been entitled "under state and federal law had the welfare agency been informed of all material facts." The majority opinion interprets "material" as relating only to the specific program for which the recipient applied. Read in context, the term does not support this interpretation. The material facts are those which would reflect the true circumstances of the applicant's position and which would, therefore, determine eligibility for any state or federal assistance program. The reasoning of the California and Washington intermediate appellate courts and of the Supreme Court of Indiana[1] in refusing to allow alleged eligibility under another AFDC program as a defense to a charge of wrongful receipt of AFDC benefits under their respective statutes is inapplicable here. Those states did not have the broad statu-

tory offset provision that Minnesota has in section 256.98. Cal.Welf. & Inst.Code § 11483 (West, 1980); Wash.Rev.Code Ann. § 74.08.331 (West, 1982); 1936 Ind. Acts, ch. 3 § 116, repealed by 1978 Ind. Acts, § 1216, P.L. 2. Further, none of the recipients in those cases made an offer of proof of eligibility under another AFDC program, as did the recipient in the case before us, but rather argued that the burden of proving ineligibility was on the state.

There are three basic AFDC programs: Absent Parent, Unemployed Parent, and Incapacitated Parent. They are all administered through the same offices, using the same personnel to determine eligibility and authorize grants. Had Ibarra applied and qualified for the Unemployed Parent program, her family would have been receiving AFDC benefits, dollars that come from the same source as the dollars she did receive. Section 256.98 allows the county to recover assistance payments made to a person who was not entitled to them. The statute in no way limits the term "assistance." If the Ibarra family qualified for the Unemployed Parent program, it was entitled to assistance in a determinable amount. That amount must be subtracted from the assistance received to determine guilt and recovery under the statute.

This interpretation of section 256.98 does not place a burden on the state to prove that anyone charged with wrongfully receiving assistance was ineligible for assistance under any other state or federal program. This interpretation simply makes an offer of proof by the recipient as to his or her eligibility for another program admissible to prove the amount that must statutorily be offset from the amount that may be recovered from the recipient. The burden of showing eligibility for another program is on the person who wrongfully received benefits. Any other interpretation, under these circumstances, would serve only to punish children, for whose benefit AFDC programs exist, because their parents lied in order to qualify for assistance under one

---

**1.** *People v. Carlson,* 76 Cal.App.3d 112, 142 Cal. Rptr. 638 (1978); *State v. Warren,* 25 Wash.App.

886, 611 P.2d 1308 (1980); *Beech v. State,* 162 Ind.App. 287, 319 N.E.2d 678 (1974).

program while remaining ignorant of the existence of a program for which they did in fact qualify. When that ignorance is the product of failure of the agency to inform, whether intentional or only negligent, the effect of punishment on needy children is too harsh. Perhaps Elizabeth Ibarra should be punished for lying to obtain AFDC Absent Parent benefits. Her child should not have to share that punishment, where, had her mother been fully informed and applied for the Unemployed Parent program, the family would have received a higher level of assistance had it been eligible.

I would hold that the trial court erred in refusing Ibarra's offer of proof that her family was eligible under another AFDC program during the time she wrongfully received benefits under the AFDC Absent Parent program. Both eligibility for and the amount that would have been received under the Unemployed Parent program were admissible to show the amount to offset against the amount incorrectly paid that may be recovered under section 256.-98. I would remand for determination of eligibility and calculation of the offset. If the amount Ibarra would have been entitled to receive is at least as great as the amount she did receive, the conviction would be reversed.

YETKA, Justice (dissenting).

I join in the dissent of Justice Wahl.