# FOR PUBLICATION



FILED
Dec 18 2013, 9:06 am
CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**CHRISTOPHER A. CAGE**
Anderson, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**IAN MCLEAN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| PAUL J. COY, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 48A02-1301-CR-65 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MADISON CIRCUIT COURT
The Honorable Thomas Newman, Jr., Judge
Cause No. 48C03-1206-FC-1116

**December 18, 2013**

**OPINION - FOR PUBLICATION**

**VAIDIK, Judge**

**Case Summary**

Paul Coy and his friend Mike Ducheteau raced cars on a two-lane road in Anderson, Indiana. Coy drove as fast as 106 miles per hour before losing control of the car and crashing it into a group of trees on the side of the road, killing one passenger, Darian Hurn, and seriously injuring his other passengers, A.K. and Z.M. Coy now appeals his convictions for one count of Class C felony reckless homicide and two counts of Class D felony criminal recklessness. Finding that the trial court properly declined to give a lesser-included instruction, there was not a fatal variation in the charging information, the trial court did not abuse its discretion by considering aggravators and failing to consider or give proper weight to mitigators, and Coy's sentence is appropriate in light of the nature of the offenses and his character, we affirm.

**Facts and Procedural History**

At approximately 1:30 p.m. on March 15, 2012, sixteen-year-old A.K. and sixteen-year-old Z.M. left school early without permission to spend time with nineteen-year-old Coy and seventeen-year-old Hurn. It was Hurn's birthday. Coy picked the girls up from school with his grandmother's car, a black 2010 Chevrolet Cobalt. Hurn was in the passenger seat. A.K. and Z.M. sat in the back seat.

After leaving the school, the group drove to Casey's Gas Station in Alexandria to meet Mike Ducheteau. Ducheteau was driving a gray Pontiac Grand Am.[1] Ducheteau's friends, Sam Gustin and Shantell Pritchett, were passengers in his car. When Coy arrived,

---

[1] Z.M. testified to the car being a Grand Prix. Tr. p. 273. Another witness, however, testified to it being a Pontiac Grand Am. *Id.* at 288.

Coy and Ducheteau put gasoline in their cars. The group visited Hurn's house briefly and then began driving toward Anderson, Indiana.

At the intersection of State Road 128 and Madison Avenue, Hurn rolled down his window and asked Ducheteau if they wanted to race. Ducheteau agreed. Coy later admitted that he also wanted to race, stating that he "was just trying to have fun with [Hurn] on his birthday. Give him a good time." Tr. p. 527. Ducheteau preferred to race on Madison Avenue because he was concerned about the police on State Road 9. *Id.* at 294. When the cars turned onto Madison Avenue, a rural two-lane road, they were both in the right lane with Ducheteau's car in front. The race began with both cars "burning out," accelerating so that the car's tires were "squealing" as they drove north on Madison Avenue. *Id.* at 442, 445. After the turn onto Madison, Coy drove his car into the left lane, where oncoming traffic travels, and attempted to pass Ducheteau. As Coy began to pass Ducheteau, Ducheteau sped up. Coy went back into the right lane. He then tried to pass Ducheteau a second time. Ducheteau again sped up, preventing Coy from passing.

On the third passing attempt, a pickup truck approached from the opposite direction in the left lane and Ducheteau rolled down his window and told Coy to get into the right lane. At this point, Coy was traveling 106 miles per hour. Tr. p. 475-76; Ex. 56. After Coy pulled into the right lane, Ducheteau slammed on his brakes and Coy swerved to avoid hitting Ducheteau's car. Coy lost control of the car, swerved onto the grass on the right side of the road, and hit a patch of trees. Between one second and one-tenth of a second before hitting the trees, Coy's car was traveling at thirty-eight miles per hour. *Id.*

3

A.K. remained in the car for about ten minutes after the accident. Coy helped A.K. out of the car and she fainted. Because of the damage to the car, Z.M. and Hurn could not get out of the car without assistance. Emergency responders used a mechanical spreader and saw to create an opening large enough for them to be removed from the car. The impact broke A.K.'s vertebrae at L1 and L2 and shattered her wrist. Z.M. sustained a broken pelvis and sternum, a blood pocket under her spleen, and bruised intestines. The crash caused the Cobalt's dashboard to be pushed into the front seat, striking Hurn. Hurn, who was bleeding, spoke briefly to A.K. before losing consciousness. Hurn was then air lifted to Methodist Hospital in Indianapolis. He sustained severe blunt-force trauma that damaged his lung, tore his spleen, and stopped his heart. Physicians at Methodist performed surgery to apply cardio-pulmonary resuscitation. They also performed surgery to repair his lung and remove his spleen. Hurn continued to bleed internally and was placed on life support. Because his heart would not beat normally and a computerized tomography scan of his brain indicated that he had sustained a "non survivable head injury," Hurn's family took him off of life support. Tr. p. 486. He died early in the morning of March 16, 2013. Ex. 60.

Meanwhile, Coy moved to Tennessee to live with his mother. A.K. called him to inform him that there was a warrant for his arrest. Once he confirmed there was an arrest warrant, he surrendered himself to the police.

The State charged Coy with one count of Class C felony reckless homicide for Hurn and two counts of Class C felony[2] criminal recklessness resulting in serious bodily injury for A.K. and Z.M. As a condition of being released on bond, Coy signed a protective order promising not to have contact with anyone who was in the car with him. Despite this, Coy continued to communicate with A.K., who was still his girlfriend, and was also charged with invasion of privacy during the pendency of this case.

At trial, Coy testified in his own defense. He claimed that he did not know how fast he was going, but he knew he was speeding. After the close of evidence, defense counsel requested that an instruction for reckless driving be provided as a lesser-included offense of reckless homicide. The State objected, arguing that no evidentiary dispute existed that would allow the introduction of the lesser-included offense. The court sustained the objection and refused to give the lesser-included instruction to the jury. The jury found Coy guilty of all charges.

At sentencing, the trial court found that Coy's lack of criminal history was a mitigator, but because he had a prior speeding ticket and "was aware of what the law was and the possible ramifications of speeding," the mitigator was given little weight. Tr. p. 623. The trial court found that Coy's violation of the protective order with A.K. was an aggravator, stating that "[h]e has flaunted the law." *Id.* at 624. It also found the fact that there were multiple victims in the case was an aggravator. *Id.* As a result of these circumstances, the trial court determined that the aggravating circumstances outweighed

---

[2] Although Coy was charged with two counts of Class C felony criminal recklessness resulting in bodily injury committed by means of a deadly weapon, it appears that the counts were reduced to Class D felonies before the beginning of trial. *See* Tr. p. 200-01.

5

the mitigating circumstances. The court sentenced Coy to eight years in the Department of Correction for Class C felony reckless homicide, and three years for each count of Class D felony criminal recklessness, running concurrently. *Id.*

Coy now appeals.

## Discussion and Decision

Coy asserts that the trial court erred in refusing to allow the lesser-included offense of reckless driving to be argued and included in the jury instructions, the State presented a fatal variation between the charging information and the proof at trial, the trial court abused its discretion in imposing the maximum sentence for reckless homicide, and his sentence is inappropriate in light of the nature of the offense and his character.

## I. Failure to Give Instruction

Coy argues that the trial court erred by failing to instruct the jury that it had the option of convicting him of reckless driving as a lesser-included offense of reckless homicide.[3] The State responds that Coy waived the issue by not tendering the pattern jury instruction.

It is well settled that "[t]he manner of instructing a jury is left to the sound discretion of the trial court." *Albores v. State*, 987 N.E.2d 98, 99 (Ind. Ct. App. 2013), *trans. denied.* When reviewing a trial court's decision to refuse or give jury instructions, this Court "considers: (1) whether the instruction correctly states the law; (2) whether there is evidence in the record to support the giving of the instruction; and (3) whether the substance of the tendered instruction is covered by other instructions which are given."

---

[3] Coy does not argue that jury instructions for the lesser-included offense of reckless driving should have been included for his two counts of criminal recklessness. Appellant's Br. p. 6.

*Watson v. State*, 972 N.E.2d 378, 383 (Ind. Ct. App. 2012) (quoting *Gravens v. State*, 836 N.E.2d 490, 493 (Ind. Ct. App. 2005), *trans. denied*).

If a trial court errs by declining to give a jury instruction, "a tendered instruction is necessary to preserve error because, without the substance of an instruction upon which to rule, the trial court has not been given a reasonable opportunity to consider and implement the request." *Garrett v. State*, 964 N.E.2d 855, 856 (Ind. Ct. App. 2012) (quoting *Mitchell v. State*, 742 N.E.2d 953, 955 (Ind. 2001)), *reh'g denied*, *trans. denied*.

> Indiana Rule of Criminal Procedure 8(D), in pertinent part, states the following:
>
> Requested instructions must be reduced to writing (identified as to the party making submission), separately numbered, and accompanied by a cover sheet signed by the party, or his attorney, who requests such instructions and will be deemed sufficiently identified as having been tendered by the parties or submitted by the court if it appears in the record from an order book entry, bill of exceptions or otherwise, by whom the same were tendered or submitted.

Indiana Trial Rule 51(E) also permits a party to request jury instructions from the Indiana Pattern Jury Instructions "by merely designating the number thereof in the publication."[4] Here, Coy merely requested that a lesser-included offense instruction be provided for reckless driving without tendering proposed jury instructions or identifying a number from the Indiana Pattern Jury Instructions. Tr. p. 538-40. For this reason, Coy has waived this issue on appeal.

---

[4] Indiana Appellate Rule 50(B)(1)(c) requires that the Appellant's Appendix include "any instruction not included in appellant's brief under Rule 46(A)(8)(e) when error is predicated on the giving or refusing of the instruction." While Coy did provide us with the verbatim objections as required in Appellate Rule 46(A)(8)(e), he did not provide us with the instructions he requested to be given either in his brief or in the Appellant's Appendix. However the absence of these instructions does not waive this issue on appeal. Ind. Appellate R. 49(B).

Waiver notwithstanding, when determining whether the trial court should give an instruction for a lesser-included offense of the crime charged, this Court conducts a three-part test. First, the Court must compare the statute of the crime charged with the statute of the lesser-included offense to determine if the lesser-included offense is included in the crime charged. *Watts v. State*, 885 N.E.2d 1228, 1231 (Ind. Ct. App. 2008) (citing *Wright v. State*, 658 N.E.2d 563 (Ind. 1995)). A lesser-included offense is inherently included in the charged statute "[i]f the alleged lesser-included offense may be established by proof of all of the same or proof of less than all of the same material elements to the crime, or if the only difference between the two statutes is the alleged lesser-included offense requires proof of a lesser culpability . . . ." *Id.*

Second, if the alleged lesser-included offense is not inherently included in the charged crime, the Court must compare the statute defining the alleged lesser-included offense with the charging information to determine if all elements of the alleged lesser-included offense are covered by the allegations in the charging instrument. *Id.* If all of the allegations are covered, then the alleged lesser-included offense is factually included in the charged crime. *Id.*

Third, if the alleged lesser-included offense is either inherently or factually included in the charged crime, the trial court must examine the evidence presented by both parties to determine "whether there is a *serious evidentiary dispute* over the element or elements that distinguish the crime charged and the lesser-included offense." *Id.* The trial court must instruct the jury on the lesser-included offense if it would be possible for the jury to find that the lesser, but not the greater, offense has been committed. *Id.* In other words, a

8

serious evidentiary dispute will be established only when a conflict in the evidence can lead to the conclusion that the alleged lesser offense was committed and that the charged crime was not committed. *Webb v. State*, 963 N.E.2d 1103, 1106 (Ind. 2012).

To determine whether the lesser-included instruction should have been given, we must apply the test established in *Wright*. We must first compare the two statutes to determine whether reckless driving is a lesser-included offense of reckless homicide. Class C felony reckless homicide occurs when a person: (1) recklessly (2) kills (3) another human being. Ind. Code § 35-42-1-5. Class B misdemeanor reckless driving, in relevant part, occurs when a person who operates a motor vehicle (1) recklessly (2) drives at such an unreasonably high speed under the circumstances to (3) endanger the safety or property of others.[5] Ind. Code § 9-21-8-52(a)(1)(A). Comparing these two statutes, proof of all of the elements of reckless homicide does not necessarily prove reckless driving. Thus, reckless driving is not inherently a lesser-included offense of reckless homicide.

Second, if the lesser-included offense is not inherently included, we must compare the statute defining the lesser-included offense, the reckless driving statute, with the charging information to determine if all elements of the alleged lesser-included offense are covered by the allegations in the charging information. Coy's charging information for reckless homicide provides:

> On or about March 15, 2012, in Madison County, State of Indiana, JAMES PAUL COY did recklessly kill another human being, to wit: Darian Stephen Hurn. ALL OF WHICH IS CONTRARY to the form of the statutes in such cases made and provided by I.C. 35-42-1-5 and against the peace and dignity of the State of Indiana.

---

[5] Because Coy never tendered jury instructions for the lesser-included offense of reckless driving, we include only the portion relevant to the facts of this case.

9

Appellant's App. p. 36. Here, the charging information does not include all of the elements of reckless driving. The charging information does not allege the fact that Coy drove at an unreasonably high speed in order to recklessly kill Hurn.

However, looking to the evidence presented at trial suggests that reckless driving is factually included within criminal recklessness in this particular case. The information at trial proved the reckless element of criminal recklessness by showing that Coy engaged in racing and drove his car up to 106 miles per hour on a two-lane highway moments before the crash. Tr. p. 475-76; Ex. 56. These facts are also sufficient to prove that Coy (1) recklessly (2) drove at such an unreasonably high speed under the circumstances to (3) endanger the safety or property of others. Because the evidence necessary to prove Class C felony reckless homicide in the context of this case required the proving of all the elements of Class B misdemeanor reckless driving, we conclude that Class B misdemeanor reckless driving was a factually included offense in the context of this case.

Because the requested lesser-included instruction is factually included, we must determine whether there is a serious evidentiary dispute over the elements that distinguish the crime charged from the lesser-included offense. The elements distinguishing Class C felony criminal recklessness from Class B misdemeanor reckless driving are (1) killing (2) another human being. *Compare* Ind. Code § 35-42-1-5 *with* Ind. Code § 9-21-8-52(a)(1)(A). To determine whether a serious evidentiary dispute exists, we must examine the evidence presented by both parties. *Webb*, 963 N.E.2d at 1107. Here, no serious evidentiary dispute exists. The evidence presented at trial established that Hurn died as a result of the crash. Tr. p. 488; Ex. 60. Because no serious evidentiary dispute exists, the

10

trial court did not abuse its discretion in failing to give an instruction for Class B misdemeanor reckless driving.

## II. Material Variance of Charging Information

Coy also argues that there was a fatal variance between the charging information on Counts II and III, Class D felony criminal recklessness, and the proof at trial.[6] Although trial counsel did not raise an objection at trial, Coy claims that the variance was fundamental error. Fundamental error occurs if the charging information "misleads the defendant or fail[s] to give him notice of the charges against him so that he is unable to prepare a defense to the accusation." *Miller v. State*, 634 N.E.2d 57, 61 (Ind. Ct. App. 1994). Coy essentially claims that fundamental error occurred because he was charged under Indiana Code section 35-42-2-2(d)(1), Class D criminal recklessness for inflicting serious bodily injury on another person, instead of Indiana Code section 35-42-2-2(b)(1), (c)(2)(b), Class D felony criminal recklessness for performing an act that creates a substantial risk of bodily injury to another person by committing aggressive driving, as defined in Indiana Code section 9-21-8-55, that results in serious bodily injury to another person.

"A variance is an essential difference between proof and pleading." *Allen v. State*, 720 N.E.2d 707, 713 (Ind. 1999) (citing *Mitchem v. State*, 685 N.E.2d 671, 677 (Ind. 1997)). A variance does not necessarily require reversal, however. *Broude v. State*, 956 N.E.2d 130, 135 (Ind. Ct. App. 2011) (citing *Mitchem*, 685 N.E.2d at 677), *trans. denied.* The test to determine whether a variance is fatal is:

---

[6] Coy does not allege that the same fatal variation occurred with respect to Count I, Class C felony reckless homicide. Appellant's Br. p. 13.

(1) was the defendant mislead by the variance in the evidence from the allegations and specifications in the charge in the preparation and maintenance of his defense, and was he harmed or prejudiced thereby;

(2) will the defendant be protected in [a] future criminal proceeding covering the same event, facts, and evidence against double jeopardy?

*Id.*

When multiple criminal statutes could apply to a single crime, "the Government may prosecute under either so long as it does not discriminate against any class of defendants . . . . Whether to prosecute and what charge to file or bring . . . are decisions that generally rest in the prosecutor's discretion." *Skinner v. State*, 732 N.E.2d 235, 238 (Ind. Ct. App. 2000), *aff'd*, 736 N.E.2d 1222 (Ind. 2000) (quoting *Comer v. State*, 428 N.E.2d 48, 54 (Ind. Ct. App. 1981)), *trans. denied*. Moreover, "[t]he State need not prosecute under the more specific of two statutes, nor under the statute carrying the lesser penalty." *Beech v. State*, 162 Ind. App. 287, 296, 319 N.E.2d 678, 684 (1974).

Here, Coy does not contend that his conduct was not chargeable under Indiana Code section 35-42-2-2(d)(1). He also does not claim that charging him under Section 2(d)(1) constitutes discrimination against a class of defendants. The charging information for Counts II and III reads:

> On or about March 15, 2012, in Madison County, State of Indiana, JAMES PAUL COY did recklessly, knowingly or intentionally inflict serious bodily [sic] on another person, to wit: Z.M. ALL OF WHICH IS CONTRARY to the form of the statutes in such cases made and provided by I.C. 35-42-2-2(d)(1) and against the peace and dignity of the State of Indiana.

> On or about March 15, 2012, in Madison County, State of Indiana, JAMES PAUL COY did recklessly, knowingly, or intentionally inflict serious bodily [sic] on another person, to wit: A.K. ALL OF WHICH IS CONTRARY to the form of the statutes in such cases made and provided by I.C. 35-42-2-2(d)(1) and against the peace and dignity of the State of Indiana.

12

Appellant's App. p. 36-37. At trial, the State proved that Coy recklessly drove his car in such a way that caused serious bodily injury to A.K. and Z.M. through the testimony of several individuals, including both Z.M. and A.K. Thus, there was no "essential difference between proof and pleading." We do not agree with Coy that a variance occurred because there was a statute under which he could be charged that more closely fit his crime. Essentially, the prosecutors used their discretion to determine what charges were filed against Coy. Both charges were applicable to the facts of this case; both charges were Class D felonies, and there was no showing that the prosecutor discriminated against Coy in charging this offense. There is no error here, much less fundamental error.

### III. Abuse of Discretion

Next, Coy contends that the trial court abused its discretion by inappropriately considering Coy's violation of a pretrial release order as an aggravator, declining to consider that Hurn induced Coy to race, and declining to give Coy's lack of criminal history much mitigating weight. Sentencing decisions are within the sound discretion of the trial court and are reviewed on appeal only for abuse of discretion. *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218 (Ind. 2007). As long as the sentence is within the statutory range, it is reviewable only for abuse of discretion. *Id.* An abuse of discretion occurs if the decision is "clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom." *Id.* (citing *K.S. v. State*, 849 N.E.2d 538, 544 (Ind. 2006)).

A trial court can abuse its sentencing discretion in several ways, including: (1) failure to enter a sentencing statement at all; (2) entering a sentencing statement that

13

explains reasons for imposing a sentence where the record does not support the reasons; (3) entering a sentencing statement that omits reasons that are clearly supported by the record and advanced for consideration; and (4) entering a sentencing statement in which the reasons given are improper as a matter of law. *Id.* at 490-91. If the trial court abuses its discretion in one of these or any other way, remand for resentencing may be the appropriate remedy "if we cannot say with confidence that the trial court would have imposed the same sentence had it properly considered reasons that enjoy support in the record." *Id.* at 491.

Although there may be several aggravating factors, "[o]nly one valid aggravator is needed to sustain an enhanced sentence." *Id.* (citing *Jones v. State*, 600 N.E.2d 544, 548 (Ind. 1992)). If one aggravating factor is improperly applied, the sentence is still valid as long as "other valid aggravators exist[ed] and the invalid aggravator did not play a significant role in the trial court's decision." *Hart v. State*, 829 N.E.2d 541, 543-44 (Ind. Ct. App. 2005).

Coy argues that the number of victims is not relevant in enhancing a sentence. However, a trial court may consider the number of victims as an aggravator. *Mateo v. State*, 981 N.E.2d 59, 73 (Ind. Ct. App. 2012) ("The number of victims can be considered an aggravating circumstance."), *trans. denied*. This, alone, was sufficient to enhance Coy's sentence.

Coy also argues that the trial court erred in considering his violation of a pretrial release order to have no contact with his girlfriend A.K. as an aggravating circumstance. Indiana Code section 35-38-1-7.1(a)(5) permits the court to consider as an aggravator the

defendant's violation of a no-contact order issued against the person. Coy argues that the statute does not apply in this case because the statute only contemplates that a person violates a protective order and not a no-contact order. Appellant's Br. p. 16. Coy is wrong. The statute also includes the violation of no-contact orders as the type of violation that the court may consider an aggravator. Ind. Code § 35-38-1-7.1(a)(5). Even still, our Supreme Court has stated that the list of factors in the statute is non-exhaustive, and thus, the trial court may consider other factors not listed in the statute as aggravating. *Anglemyer*, 868 N.E.2d at 488.

Here, the trial court concluded that by violating the no-contact order Coy had "flaunted the law." Tr. p. 624. Moreover, the trial court stated that "he has flaunted what he's done and I think it has a total and significant effect on whether or not he's remorseful. It leaves me to believe that he was not . . . ." *Id.* We conclude that Coy's total disregard for the law, despite the fact that he continued to maintain a relationship with A.K., was a valid aggravating circumstance.

Coy also contends that the trial court did not properly consider that Hurn induced the offense and that Coy had a minimal criminal history as mitigating circumstances. Indiana Code section 35-38-1-7.1 states that "[t]he court *may consider*" as a mitigating circumstance that "[t]he victim of the crime induced or facilitated the offense" and "[t]he person has no criminal history of delinquency or criminal activity, or the person has led a law-abiding life for a substantial period before commission of the crime" (emphasis added). While the court may consider these factors, it is not required to do so.

Here, the court did consider the fact that Hurn encouraged Coy to race. The court stated that "[e]ven if it was at the consent and urging of somebody else, he was aware of what the law was and the possible ramifications of speeding." *Id.* at 623. Although the trial court was speaking in the context of Coy's criminal history, its acknowledgement that Hurn encouraged Coy to race suggests that the court considered the factor and chose not to give it mitigating weight. Similarly, the court considered Coy's criminal history, determining that its weight should be "de minimus" because Coy chose to disregard the speeding law after receiving a previous ticket and because "violating speeding laws may tend to cause serious damage not only to the person but to property." *Id.* One speeding ticket does not establish a significant criminal history and the trial court should have given his lack of criminal history moderate mitigating weight. Even so, we are confident given the aggravating circumstances here that the trial court would have imposed the same sentence.

### IV. Appropriateness

Last, Coy contends that his eight-year sentence is inappropriate in light of the nature of the offenses and his character.

Although a trial court may have acted within its lawful discretion in imposing a sentence, Article 7, Sections 4 and 6 of the Indiana Constitution authorize independent appellate review and revision of sentences through Indiana Appellate Rule 7(B), which provides that a court "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds the sentence is inappropriate in light of the nature of the offense and the character of the offender." *Reid v. State*, 876 N.E.2d 1114,

16

1116 (Ind. 2007) (citing *Anglemyer*, 868 N.E.2d at 491). When assessing the nature of the offense and the character of the offender, we may look to any factors appearing in the record. *Stetler v. State*, 972 N.E.2d 404, 408 (Ind. Ct. App. 2012), *trans. denied*. The defendant has the burden of persuading us that his sentence is inappropriate. *Reid*, 876 N.E.2d at 1116 (citing *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006)).

The principal role of Rule 7(B) review "should be to attempt to leaven the outliers, and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve a perceived 'correct' result in each case." *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008). We "should focus on the forest—the aggregate sentence—rather than the trees—consecutive or concurrent, number of counts, or length of the sentence on any individual count." *Id.* Whether a sentence is inappropriate ultimately turns on the culpability of the defendant, the severity of the crime, the damage done to others, and a myriad of other factors that come to light in a given case. *Id.* at 1224.

A person who commits a Class C felony shall be imprisoned for a term of between two and eight years, with four years being the advisory term. Ind. Code § 35-50-2-6(a). A person who commits a Class D felony shall be imprisoned for a term of between six months and three years, with one-and-a-half years being the advisory term. Ind. Code § 35-50-2-7(a).

Here, the trial court sentenced Coy to eight years for the Class C felony and three years for each Class D felony and ordered the sentences to be served concurrently. This is

17

within the statutory range. The aggregate term is eight years, which is within statutory guidelines.

The nature of Coy's crimes is serious. Coy raced his car on a street with three high-school-aged children in the car. In the course of his racing, the speed of his car reached 106 miles per hour. As a direct result of him driving too fast, he lost control of his car and crashed. The car accident caused Hurn to sustain severe blunt-force trauma that damaged his lung, tore his spleen, and stopped his heart. He died on the day after his seventeenth birthday. Additionally, the crash caused A.K., a sixteen-year-old girl, to sustain a broken back and a shattered wrist and Z.M., a sixteen-year-old girl, to sustain a broken pelvis and sternum, a blood pocket under spleen, and bruised intestines. Coy also destroyed his grandmother's car.

As to Coy's character, he only has one previous speeding ticket. However, through his actions, Coy has shown a disregard for the law. After being released on bond, he violated a no-contact order and continued communicating with A.K.

Given the nature of these offenses and his character, Coy has failed to persuade us that his aggregate eight-year sentence is inappropriate. We therefore affirm the trial court.

Affirmed.

BAKER, J., and FRIEDLANDER, J., concur.

18