## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 14 2017, 9:04 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Amy D. Griner
Mishawaka, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Michael Gene Worden
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Albert Webb,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

February 14, 2017

Court of Appeals Case No.
20A05-1604-CR-1001

Appeal from the Elkhart Circuit Court

The Honorable Terry C. Shewmaker, Judge

Trial Court Cause No.
20C01-1504-FB-14

**Baker, Judge.**

[1] Albert Webb appeals his convictions for two counts of Robbery,[1] a Class B felony, five counts of Confinement,[2] a class B felony, and one count of Conspiracy to Commit Robbery,[3] a class B felony. Webb raises the following arguments on appeal: (1) there is insufficient evidence supporting the convictions; (2) the trial court erroneously instructed the jury; (3) the convictions for conspiracy to commit robbery and robbery violate the prohibition against double jeopardy; (4) the trial court erred in sentencing Webb; and (5) the sentence imposed by the trial court is inappropriate in light of the nature of the offenses and Webb's character. Finding no error and finding that the sentence is not inappropriate, we affirm.

## Facts

[2] In December 2013, Webb lived in Goshen with his girlfriend, Amy Watts, and her two young children, one of whom was Webb's son. Webb's friend, Shaquan Moorer, was also living there at the time. A few days before December 14, 2013, Webb, Moorer, Quincy Sullivan, and William Jackson discussed a plan to rob the nearby MC Sporting Goods store. The group decided that Webb would bring his long-barreled handgun and a bag of zip ties; they would use Sullivan's vehicle; and Jackson would act as lookout and

---

[1] Ind. Code § 35-42-5-1.

[2] I.C. § 35-42-3-3.

[3] Ind. Code § 35-41-5-2; I.C. § 35-42-5-1.

getaway driver.  A day or two before December 14, Moorer and Sullivan cased the store to determine whether any store employees carried a gun.

[3]     The group decided to rob the store the night of December 14.  That evening, Webb made Watts stay in her bedroom while the four men discussed their final plans.  Webb provided white painter suits for himself, Moorer, and Sullivan, which the three men changed into in Sullivan's car once they arrived in the store's parking lot.  Webb brought the zip ties, his handgun, and a black duffel bag into the store.  The three men also disguised their faces, with Moorer using a gas mask that he and Webb often used to enhance their marijuana smoking.

[4]     Webb, Moorer, and Sullivan entered the store, grabbed the two young women at the front cash registers, and forced them at gunpoint to enter the front office. The assistant manager let them in and Webb brandished his handgun while Moorer zip-tied the three women's hands and legs.  Webb and Moorer left the three bound women in the office, but the women were able to watch the robbery on the security monitors.  At Webb's direction, Moorer and Sullivan went to the store's gun department, where they loaded up the duffel bag with handguns, rifles, and ammunition.  They stole a total of forty-seven guns.  One of the men robbed a male customer who was inside the store at the time.  Webb forced a seventeen-year-old store employee to push a cart containing the stolen goods out of the store at gunpoint, where the men loaded up the trunk of the car and then left the store and headed back to Watts's apartment.

[5] Upon returning to the apartment, Webb again told Watts to go to her bedroom. The men hid the guns inside the apartment. Meanwhile, Goshen police had been alerted to the robbery and ended up in the parking lot of Watts's apartment complex. Webb decided to go outside to see what the police officers were doing; he carried a baby car seat outside with him to avoid looking suspicious. While outside, Webb texted Sullivan with orders to tell Watts not to let the police inside her apartment. She followed the command and refused to give permission to police officers to come inside. Webb was arrested that night on an outstanding warrant from another county.

[6] After Watts refused entry to police officers, Moorer and Sullivan moved the guns to Sierra Lee's apartment. Moorer and Sullivan each kept a handgun. The next day, Lee showed the guns to her friends, took a picture of the guns, and she and her friends kept a few guns for themselves. Webb called her and told her that someone would come by to pick up the guns, and a couple of days later, someone came and took the remaining guns. Most of the guns have not been recovered by law enforcement.

[7] Moorer was eventually arrested in Chicago. At the time of his arrest, he admitted some of what happened but did not fully divulge the events of the robbery, telling officers that Sullivan was the mastermind of the robbery and that Sullivan brandished the gun during the incident. At trial, Moorer testified under a grant of use immunity, telling the jury that, in fact, it was Webb who was the mastermind, Webb who held the gun during the robbery, and Webb who directed them to take the guns from the store. Both Moorer's and Webb's

DNA were found on the gas mask recovered by police. Police officers also found white painter suits and other items related to the robbery in Sullivan's car.

[8] On April 9, 2015, the State charged Webb with two counts of class B felony robbery, five counts of class B felony criminal confinement, and one count of class B felony conspiracy to commit robbery. Webb's jury trial took place between February 29 and March 4, 2016. On March 4, 2016, the jury found Webb guilty as charged. On April 7, 2016, the trial court sentenced Webb as follows: (1) two consecutive fourteen-year terms for the robbery convictions; (2) three consecutive and two concurrent ten-year terms for the confinement convictions; and (3) one concurrent ten-year term for conspiracy. Thus, Webb's aggregate sentence is fifty-eight years imprisonment. Webb now appeals.

# Discussion and Decision

## I. Sufficiency

[9] Webb first argues that the evidence is insufficient to support his convictions. Specifically, he contends that the evidence did not establish beyond a reasonable doubt that he was one of the perpetrators of these crimes. When reviewing a claim of insufficient evidence, we will consider only the evidence and reasonable inferences that support the conviction. *Gray v. State*, 957 N.E.2d 171, 174 (Ind. 2011). We will affirm if, based on the evidence and inferences, a reasonable jury could have found the defendant guilty beyond a reasonable doubt. *Bailey v. State*, 907 N.E.2d 1003, 1005 (Ind. 2009).

As the victims of the robbery were unable to identify the robbers, the primary evidence against Webb comes from Moorer's testimony. Although the testimony of a co-defendant is subject to high scrutiny, such testimony alone is nonetheless sufficient to sustain a conviction. *Stephenson v. State*, 742 N.E.2d 463, 496-97 (Ind. 2001). The fact that such a witness may not be completely trustworthy goes to the weight and credibility of the testimony and is wholly within the jury's province to determine. *Id.* at 497.

Here, the jury was informed that Moorer had been granted immunity for his testimony and was fully aware of the benefit the State had given Moorer in exchange for his testimony. The jury was also apprised of Moorer's criminal history, and Moorer was extensively cross-examined about his testimony, prior statements, inconsistencies, and his reasons for testifying. The jury was fully capable of assessing Moorer's credibility in light of this information and we will not second-guess the jury's assessment. Moorer's argument amounts to a request that we reweigh the evidence and reassess witness credibility—a request we decline.

Moorer also argues that Moorer's testimony was incredibly dubious. The incredible dubiosity rule allows appellate courts to impinge upon the jury's function to assess witness credibility, but the rule applies only under limited circumstances. *Moore v. State*, 27 N.E.3d 749, 754 (Ind. 2015). For the rule to apply, (1) there must be a sole testifying witness; (2) that witness's testimony must be inherently contradictory, equivocal, or the result of coercion; and (3) there must be a complete absence of circumstantial evidence. *Id.* at 756. The

fact that a witness may have given pretrial statements that contradict or are inconsistent with his trial testimony does not implicate the incredible dubiosity rule. *Id.* at 758.

[13]     Here, there were multiple witnesses to the crimes who testified at trial, including store employees and customers, as well as surveillance video. The testimony of these witnesses corroborated Moorer's testimony. Furthermore, while Moorer's testimony may have been inconsistent with his pretrial statements, he was far from equivocal in his testimony that Webb was the mastermind of the robbery, provided and used the gun during the robbery, provided the zip ties and suits used in the robbery, told them to steal the guns, and texted what to do about the police when he was unable to return to Watts's apartment after the robbery. Finally, there was ample circumstantial evidence corroborating Moorer's testimony, including testimony of other witnesses, the white suits recovered by the police, and the gas mask recovered by police, which tested positive for Moorer's and Webb's DNA. Under these circumstances, we can easily conclude that the incredible dubiosity rule does not apply. We find the evidence sufficient to support Webb's convictions.

## II.  Jury Instructions

[14]     Next, Webb argues that the trial court committed fundamental error in instructing the jury. Webb concedes that he did not object to the jury instructions. Webb's conduct, however, went a step farther—he explicitly told the trial court that he had no objections to the instructions, twice. Therefore, to

the extent that any error occurred, the error was invited. *Hill v. State*, 51 N.E.3d 446, 451 (Ind. Ct. App. 2016). The fundamental error doctrine may be available for issues that were not properly preserved for appeal. *Matthews v. State*, 849 N.E.2d 578, 587 (Ind. 2006). The doctrine applies only where the error was a blatant violation of basic principles, the harm or potential for harm is substantial, and the resulting error made a fair trial impossible. *Id.* at 587; *Oster v. State*, 992 N.E.2d 871, 878 (Ind. Ct. App. 2013). As invited error does not constitute fundamental error, Webb's claim must fail. *Brewington v. State*, 7 N.E.3d 946, 974-75 (Ind. 2014).

[15] Waiver and invited error notwithstanding, we note that, in fact, there was no error at all. Webb contends that the trial court erred in its jury instruction regarding mens rea. Specifically, the trial court instructed the jury only on "knowing" actions and did not instruct the jury on "intentional" actions. Appellant's App. Vol. II p. 15-16. The robbery, criminal confinement, and accomplice statutes all provide that the mens rea for these offenses may be "knowing[] *or* intentional[]." I.C. § 35-41-2-4; I.C. § 35-42-3-3; I.C. § 35-42-5-1 (emphasis added). And here, the State alleged only the "knowing" mens rea in the charging information. As a result, the State was required only to prove beyond a reasonable doubt that Webb acted knowingly, and the trial court's

instructions accurately reflected this.  In sum, Webb's jury instructions argument is unavailing.[4]

# III.  Double Jeopardy

Next, Webb argues that his convictions for robbery and conspiracy to commit robbery violate the prohibition against double jeopardy.  We apply a de novo standard of review to a double jeopardy claim.  *Berg v. State*, 45 N.E.3d 506, 509 (Ind. Ct. App. 2015).

Webb argues only that his convictions violate the actual evidence test.  To succeed in making this argument, a defendant must show that there is a reasonable possibility that the evidentiary facts used by the jury to establish the essential elements of one offense may have also been used to establish the essential elements of a second challenged offense.  *Id.*  For there to be a double jeopardy violation under the actual evidence test, "the evidentiary footprint for *all* the elements required to prove one offense must be the same evidentiary footprint as that required to prove *all* the elements of another offense."  *Id.* at 510 (emphases added).

To convict Webb of robbery, the State was required to prove that he knowingly took property from MC Sporting Goods by using or threatening the use of force

---

[4] We also note that even if the instructions had been erroneous, Webb could not have established prejudice. His intent was never a real issue at trial; instead, the central issue was his identity—whether he was one of the perpetrators of these crimes.

on any person while armed with a deadly weapon. I.C. § 35-42-5-1. To convict Webb of conspiracy, the State was required to prove that he, with the intent to commit robbery, agreed with Jackson, Moorer, and Sullivan to commit robbery, and that Webb or the other people committed an overt act in furtherance of the agreement. I.C. § 35-41-5-2. In the context of robbery and conspiracy to commit robbery convictions, there is no double jeopardy violation where the evidence of the overt act alleged for the conspiracy was not an act alleged for the robbery. *E.g.*, *Estrada v. State*, 969 N.E.2d 1032, 1044-47 (Ind. Ct. App. 2012).

[19] Here, the State alleged that Webb agreed with Jackson, Moorer, and Sullivan to commit robbery while armed with a deadly weapon. The overt act alleged in furtherance of this conspiracy was that Webb disguised himself with a white painter suit. In other words, once Webb donned the white painter suit, the conspiracy offense was complete. For the robbery, the State alleged that Webb, along with the others, took merchandise from the store by using or threatening the use of force while armed with a handgun. Under these circumstances, there is no reasonable possibility that all of the facts of either offense were used to establish all of the essential elements of the other offense. Therefore, Webb's double jeopardy claim fails.

# IV.  Sentencing

[20] Finally, Webb contends that the trial court erred in sentencing him.  He also argues that the sentence is inappropriate in light of the nature of the offenses and his character.

# A.  Errors in Sentencing

[21] Webb argues that the trial court erred by considering invalid aggravating factors.  *See Winkleman v. State*, 22 N.E.3d 844, 852 (Ind. Ct. App. 2014) (observing that one of the ways a trial court can err in sentencing a defendant is by entering a sentencing statement that includes reasons that are improper as a matter of law).  Even if we find error, we will remand for resentencing only if we cannot say with confidence that the trial court would have imposed the same sentence had it considered only the valid aggravator(s).  *Bethea v. State*, 983 N.E.2d 1134, 1139 (Ind. 2013).  Only one valid aggravating factor is needed to justify enhancement of a sentence.  *Coy v. State*, 999 N.E.2d 937, 947 (Ind. Ct. App. 2013).

[22] In this case, the trial court found eighteen aggravating factors:

- The crimes impacted many families.
- There were multiple victims and multiple counts; it "wasn't just like one offense."  Tr. p. 974.
- There were multiple perpetrators.
- Some of the victims were less than eighteen years of age.
- The perpetrators attempted to destroy or hide part of the evidence from police.

- The crimes ended up involving Watts and Lee, who "were brought into the case as a result of actions [Webb] and [his] compatriots took." *Id.* at 975.
- The guns that were stolen in the robbery were transported to Watts's apartment, where children lived.
- The fact that Sullivan and Moorer went to the store in the days leading up to the robbery to determine whether store employees carried guns.
- Webb's criminal history: "This offense was committed while you were on probation. There's a pending warrant for your arrest. You have a prior violation of probation. You have a prior misdemeanor, four failures to appear, and a prior felony." *Id.*
- Webb used marijuana on the day of the robbery.
- The four co-conspirators developed an elaborate plan: "[m]asks, painter suits, guns, cars, and zip ties and an elaborate plan was put together to commit the offenses." *Id.* at 976.
- Webb's driver's license was suspended.
- The crimes were "a very, very serious set of cases posing grave danger to multiple victims." *Id.*
- In Webb's case, sanctions short of imprisonment have proved ineffective: "We tried probation, court costs, fines, suspended sentences, reporting probation, and license suspension. None of those have caused [his] rehabilitation[.]" *Id.*
- A lesser sentence would depreciate the seriousness of the offense.
- There is "an escalation of offenses here moving upward in severity, seriousness, and the use of the weapons. That is concerning." *Id.*
- Multiple guns were stolen.
- Webb was the mastermind of the conspiracy and the robbery.

As mitigating circumstances, the trial court considered Webb's relatively young age of twenty-six years as well as statements made by Webb and his attorney.

[23] Webb directs our attention to the following aggravators, which he contends were improper as a matter of law: (1) a lesser sentence would depreciate the seriousness of the offense; (2) in combination, the factors of the crime impacting

many families and many victims, the multiple co-offenders, and the fact that Watts and Lee were brought into the criminal offenses; (3) one of the victims was under the age of eighteen; (4) the offenders attempted to destroy evidence; (5) the fact that the guns were taken to a place where children live; and (6) Moorer and Sullivan scoped out the business prior to the robbery.

[24] Accepting solely for argument's sake that Webb is correct that the above aggravators were improper as a matter of law, the following unchallenged aggravators remain: Webb's criminal history; the fact that Webb smoked marijuana on the day of the robbery; the serious nature and circumstances of the crime; the fact that Webb has had multiple opportunities in the past to reform his behavior but all sanctions short of imprisonment have failed; multiple guns were stolen and dispersed into the community; and Webb was the mastermind of the conspiracy and the robbery. We are confident that even if the trial court had not considered the aggravators challenged by Webb, it would have imposed the same sentence in light of the many aggravators that remain. Consequently, Webb's sentencing argument is unavailing and we decline to remand for resentencing.

## B. Appropriateness

[25] Finally, Webb argues that the sentence is inappropriate in light of the nature of the offenses and his character. Indiana Appellate Rule 7(B) provides that this Court may revise a sentence if it is inappropriate in light of the nature of the offense and the character of the offender. We must "conduct [this] review with

substantial deference and give 'due consideration' to the trial court's decision—since the 'principal role of [our] review is to attempt to leaven the outliers,' and not to achieve a perceived 'correct' sentence . . . ." *Knapp v. State*, 9 N.E.3d 1274, 1292 (Ind. 2014) (quoting *Chambers v. State*, 989 N.E.2d 1257, 1259 (Ind. 2013)) (internal citations omitted).

[26] Webb was convicted of eight class B felonies. For each, he faced a term of six to twenty years imprisonment, with an advisory term of ten years. Ind. Code § 35-50-2-5(a). For the two robbery convictions, the trial court imposed consecutive fourteen-year terms. For the remaining six convictions, the trial court imposed advisory ten-year terms, with three to run consecutively and three to run concurrently. Thus, Webb's aggregate sentence is fifty-eight years imprisonment—far short of the maximum possible term he faced.

[27] As for the nature of Webb's offenses, he and his co-conspirators made an elaborate premeditated plan to commit armed robbery. Two of the offenders went to the store in the days leading up to the robbery to scope out the scene. Webb readied the items needed for the robbery, including a handgun, zip ties, duffel bag, and white painter suits. When they arrived at the store, Webb and his masked counterparts terrorized several young store employees and customers, threatening them at gunpoint and forcing one seventeen-year-old to push the cart carrying the stolen guns outside of the store—an action that made the teenager fear he would be killed. All told, the group stole forty-seven guns, most of which have not been recovered by law enforcement and remain a serious threat to the general public. Webb was the mastermind behind the

entire scheme and was the only one of the group armed with a gun. After the fact, he ordered Watts to refuse to allow police officers to search the apartment, enabling his counterparts to abscond with the stolen guns. We do not find that the nature of the offenses aids Webb's argument.

[28] As for Webb's character, he has a prior misdemeanor and a prior felony conviction. He committed the instant offenses while on probation and with an outstanding arrest warrant. He has failed to appear for court four times in the past and has violated probation at least once. Moreover, after the robbery was complete, he directed his co-conspirators to return to Watts's residence, taking nearly fifty stolen guns to the apartment where his girlfriend and her two young children lived—one of whom was Webb's own son. It is evident that despite multiple opportunities, Webb is unable or unwilling to respect his fellow citizens and abide by the rule of law. We do not find that Webb's character aids his argument. Therefore, we do not find that the sentence imposed by the trial court is inappropriate in light of the nature of the offenses and Webb's character.

[29] The judgment of the trial court is affirmed.

Mathias, J., and Pyle, J., concur.